O'CONNOR, BY HER PARENTS AND NEXT FRIENDS,
O'CONNOR ET UX. *v.* BOARD OF EDUCATION
OF SCHOOL DISTRICT 23 ET AL.

No. A–384.   Decided November 4, 1980

JUSTICE STEVENS, Circuit Justice.

On October 27, 1980, a panel of the United States Court of Appeals for the Seventh Circuit granted a stay pending appeal of a preliminary injunction entered by the District Court in favor of the plaintiff. Two days later, the Court of Appeals sitting en banc entered an order continuing the stay. The plaintiff has submitted to me, in my capacity as Circuit Justice, an application to vacate this stay. For the

1301

reasons explained below, I have decided not to vacate the stay entered by the Court of Appeals.

## I

On October 22, 1980, plaintiff Karen O'Connor, represented by her father and her mother, filed a verified complaint and a motion for a temporary restraining order and preliminary injunction, supported by appropriate affidavits, in the United States District Court for the Northern District of Illinois. Her papers allege the following facts which, since they have not yet been denied or contradicted by countervailing affidavits or evidence, must be accepted as true.

Karen is an 11-year-old sixth-grade student at MacArthur Junior High School; she is 4'11" tall and weighs 103 pounds. For at least four years she has successfully competed with boys in various organized basketball programs. A professional basketball coach who witnessed her play with boys and girls aged 10 to 13 during the summer of 1980 rates her ability as equal to or better than a female high school sophomore player and equal to that of a male eighth-grade player.

MacArthur Junior High School is a member of the Mid-Suburban Junior High School Conference, an association of six junior high schools engaged in interscholastic athletics. MacArthur has programs for seventh-grade and for eighth-grade teams; sixth-grade students are eligible to try out for both the seventh-grade and the eighth-grade teams. Students of either sex may compete on the same teams in some noncontact sports, but Conference rules require separate teams for boys and girls for contact sports. Contact sports include "boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose of major activity of which involves bodily contact." See Complaint ¶ 35.

On August 27, 1980, Karen's father requested that she be permitted to try out for the boys' basketball teams. After a series of requests and refusals, Karen and her parents com-

menced this litigation, seeking both a temporary order re-
quiring defendants to allow her to participate in the tryouts
which were originally scheduled to commence on October 27,
1980, and permanent relief allowing her to play in interscho-
lastic competition if she made either the seventh-grade or the
eighth-grade team.

After an adversary hearing, on October 23, 1980, the Dis-
trict Court rendered an oral opinion and granted temporary
relief to the plaintiff. The court held that the plaintiff had
established a likelihood of success on the merits and that she
would suffer irreparable injury if temporary relief was denied.
The court concluded that she had a constitutionally protected
interest in equal access to training and competition that would
develop her athletic talents. The court rejected the two
justifications presented by the defendants at the hearing.

First, without deciding whether the provision of separate
but equal facilities to male and female students would avoid
any constitutional objection, the District Court found that the
separate programs offered by the defendants were not in fact
equal because Karen's opportunity to compete with persons of
substantially lesser skill in the girls' program was not as
valuable as the opportunity to compete with those who are
equal or superior to her in ability in the boys' program.

Second, the defendants argued that if they allowed Karen to
try out for the boys' teams, they would have to allow boys
to try out for the girls' teams, and since boys generally have
superior athletic ability, the boys would dominate the girls'
programs and ultimately deprive girls of a fair opportunity
to engage in competitive athletics. The District Court re-
jected this argument, stating merely that the defendants had
not persuaded it that there were no less restrictive alterna-
tives available, other than completely separate programs clas-
sified entirely on the basis of sex.

The District Court refused to grant a stay pending appeal.
As I understand the facts, defendants thereafter (1) post-

poned the tryouts;[1] (2) filed an appeal from the preliminary injunction requiring them to allow Karen to try out for the boys' teams; and (3) applied to the Court of Appeals for a stay of the District Court's injunction. On October 27, by a vote of 2 to 1, a three-judge panel granted a stay, without opinion. On October 29, 1980, the Court of Appeals, sitting en banc, voted 5 to 3 to continue the stay pending the appeal. On October 31, 1980, the plaintiff filed her petition to vacate the stay entered by the Court of Appeals, supported by various papers filed in the District Court and the Court of Appeals. Defendants filed their response on November 3, 1980.

## II

Although I have the power, acting as Circuit Justice, to dissolve the stay entered by the Court of Appeals, *Holtzman* v. *Schlesinger*, 414 U. S. 1304, 1308 (1973) (MARSHALL, J., in chambers), this power is to be exercised "with the greatest of caution and should be reserved for exceptional circumstances." *Ibid.* A Court of Appeals' decision to enter a stay is entitled to great deference, *Commodity Futures Trading Comm'n* v. *British American Commodity Options Corp.*, 434 U. S. 1316, 1319 (1977) (MARSHALL, J., in chambers); such deference is especially appropriate when the Court of Appeals has acted en banc. Nevertheless, the question presented by the application is sufficiently difficult to justify careful consideration.[2] In answering that question, I shall first identify certain propositions that seem to be adequately established.

---

[1] The papers filed on behalf of Karen in this Court suggest that the defendants rescheduled the tryouts in order to deprive Karen of the opportunity to try out for the boys' teams while the defendants sought a stay from the Court of Appeals. The defendants assert that the rescheduling was required because of the postponement, due to inclement weather, of another athletic event. Because the motive underlying the rescheduling is not relevant to the question presented here, resolution of this factual conflict is unnecessary.

[2] The difficulty of the question presented by the defendants' request for

First, there is no dispute about the fact that the defendants have acted under color of state law and that their refusal to allow Karen to try out for the boys' teams is based solely on the fact that she is a girl. Whether or not Karen's interest in improving her athletic skills is characterized as "fundamental" or something less, I think it is clear that the defendants have the burden of justifying a discrimination of this kind.

Second, since the burden of justification was on the defendants, at this stage of the proceeding the stay entered by the Court of Appeals cannot be upheld on grounds not yet supported by the record, even though it may remain open to the defendants to offer additional evidence at a full trial. Thus, for example, the defendants have preserved the right to offer evidence to support the proposition that the exclusion of girls from the boys' teams is necessary to protect female athletes from harm. They were unable to present evidence supporting such a justification at the preliminary hearing, however, and therefore this justification is not available to them at this stage of this proceeding. Defendants have also made no claim that the *boys'* athletic program would be harmed in any way by allowing Karen to participate.[3] Nor have they suggested

a stay is illustrated by the fact that Judge Cudahy, a member of the majority of the panel which granted the stay on October 27, dissented from the Court of Appeals' en banc decision to continue the stay on October 29.

[3] In their response filed in this Court, the defendants have suggested that the girls' basketball program will be injured if Karen is allowed to participate in the boys' program, because the girls' program will then be deprived of its best athlete. This justification, like the need to protect female athletes from physical or psychological harm, while plausible, is not supported by the present record. It cannot, therefore, be used as a basis for upholding the stay entered by the Court of Appeals. The fact that defendants advance this argument indicates that they regard Karen as still eligible to participate in the girls' program even though she declined to participate in the girls' tryouts while this matter has been pending.

that the exclusion of Karen is necessary in order to protect Karen from harm.

Third, although the record is incomplete, plaintiff does not appear to dispute defendants' representation that the separate athletic programs for the girls are equal to the boys' programs in the sense that the time, money, personnel, and facilities devoted to each are equal. Defendants are therefore correct in putting to one side the cases in which a number of courts have ordered schools to allow girls to participate on boys' teams following a showing that the girls' programs were inferior.

Fourth, in deciding whether to vacate the stay, I have a duty to consider the potential of irreparable harm to the respective parties. Although defendants have argued to the contrary, I am persuaded that the District Court was correct in concluding that, if Karen will probably succeed on the merits, she would suffer greater harm than would the defendants by allowing her to try out for the boys' teams. I am therefore persuaded that the stay can only be supported by the sufficiency of the defendants' showing that there is an adequate reason for discriminating against Karen because of her sex.

In my opinion, the question whether the discrimination is justified cannot depend entirely on whether the girls' program will offer Karen opportunities that are equal in all respects to the advantages she would gain from the higher level of competition in the boys' program. The answer must depend on whether it is permissible for the defendants to structure their athletic programs by using sex as one criterion for eligibility. If the classification is reasonable in substantially all of its applications, I do not believe that the general rule can be said to be unconstitutional simply because it appears arbitrary in an individual case.[4]

---

[4] I share District Judge Marshall's view that if attention is confined to the application of the rule to Karen—rather than to the general

It seems to me that there can be little question about the validity of the classification in most of its normal applications. Without a gender-based classification in competitive contact sports, there would be a substantial risk that boys would dominate the girls' programs and deny them an equal opportunity to compete in interscholastic events. The defendants' program appears to have been adopted in full compliance with the regulations promulgated by the Department of Health, Education, and Welfare.[5] Although such compliance certainly does not confer immunity on the defendants,

---

validity of the rule—the discrimination does appear arbitrary. In some respects, Karen's claim is no different from that of any other sixth or seventh grader. The younger children are permitted to try out for the eighth-grade teams, but the eighth graders are excluded from the seventh-grade teams because their participation would be unfair to the younger students. The fact that an eighth grader must face competition from talented seventh graders without reciprocal rights indicates that there is no necessary reason why boys may not be required to compete with talented girls without reciprocal rights. I would also note that Karen's claim is supported by the Court's equal protection analysis in *Caban* v. *Mohammed*, 441 U. S. 380, 391–394 (1979); see *id.*, at 409–412 (STEVENS, J., dissenting).

[5] The Department of Health, Education, and Welfare, pursuant to Title IX of the Education Amendments of 1972, 20 U. S. C. § 1681, promulgated regulations designed to eliminate discrimination on the basis of sex in education programs and activities receiving federal financial assistance. One of these regulations, specifically addressing gender-based discrimination in athletic programs, provides in part:

"[A] recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport. For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose of major activity of which involves bodily contact." 45 CFR § 86.41 (b) (1979).

it does indicate a strong probability that the gender-based classification can be adequately justified.  At least that probability is sufficient to persuade me that I should adhere to the practice of according deference to the judgment of the majority of my colleagues on the Court of Appeals.

The application to vacate the stay is denied.