Karen O'CONNOR, by her parents and next friends, Joseph O'Connor and Frances O'Connor, Plaintiff-Appellee,

v.

BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 23, a body politic and corporate, Dean Eitel, Sallyann Okuno, Jane Adelman, Susan Lewis, James Kastner, Ann Marie Lundstrom, and Mary Ann Stitak, as officers and members of the Board of Education of School District No. 23, Edward Grodsky, as Superintendent of School District No. 23, Gerald McGovern, as Assistant Superintendent of School District No. 23, Philip Arenstein, as Principal of MacArthur Junior High School, Mid-Suburban Junior High School Conference, and Robert D. White, an officer of the Mid-Suburban Junior High School Conference, Defendants-Appellants.

No. 80–2501.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1980.

Decided April 10, 1981.

Rehearing and Rehearing En Banc Denied July 2, 1981.

Allen D. Schwartz, Chicago, Ill., for defendants-appellants.

Rosemarie J. Guadnolo, Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, BAUER and WOOD, Circuit Judges.

BAUER, Circuit Judge.

In this equal protection case, the district court granted a preliminary injunction restraining the Board of Education of Prospect Heights School District No. 23, and other defendants, from refusing to permit plaintiff-appellee Karen O'Connor to try out for the boys' sixth grade basketball team. We stayed enforcement of the pre-

liminary injunction pending appeal and now reverse.

### I

Karen O'Connor is an 11-year-old sixth grade student at MacArthur Junior High School in suburban Cook County, Illinois. The school is a member of the Mid-Suburban Junior High School Conference, an association of six junior high schools engaged in interscholastic athletics. Conference rules require separate teams for boys and girls in contact sports, including basketball.[1]

On August 27, 1980, Karen's father asked that she be permitted to try out for the boys' interscholastic basketball team. Karen is a good athlete; a professional basketball coach who observed her play rated her ability as equal to or better than a female high school sophomore and equal to that of a male eighth-grade player. Nonetheless, on October 10, 1980, the Board of Education denied the request, but invited Karen to try out for the girls' interscholastic team.

Karen, represented by her parents, filed her complaint and a motion for a temporary restraining order or preliminary injunction on October 22, 1980. The district court held an adversary hearing on October 23 and afterward rendered an oral opinion. The court held that the O'Connors had established a likelihood of success on the merits and that Karen would suffer irreparable injury if temporary relief was denied. The court found that the school's classification violated her fundamental "right to develop" and that "the right to education is a fundamental right and the rights to the constituent elements of an education is a fundamental right [sic]." The court further held that the MacArthur programs for boys' and girls' basketball were unequal because Karen's competition with girls of substantially lesser skill was not as valuable as competition with persons of equal or better skills in the boys' program. The district court also rejected defendants' argument that they would have to open both teams to both sexes and that the boys would dominate.

---

1. The Mid-Suburban Junior High School Conference is not a party to this appeal.

Applying a strict scrutiny analysis, the court held simply that the Board had failed to show that the MacArthur program was the least restrictive alternative.

The district court refused to grant a stay pending appeal. Defendants immediately applied for a stay in the Court of Appeals, which was granted on October 27 by a three judge panel. On October 29, this Court, sitting *en banc*, voted 5 to 3 to continue the stay pending appeal.

Plaintiff filed a petition to vacate the stay with Mr. Justice Stevens, sitting as Circuit Justice. On November 4, 1980, he denied the petition, holding that the circumstances did not justify a departure from the usual rule of according great deference to a Court of Appeals decision to enter a stay. *O'Connor v. Board of Education,* — U.S. ——, 101 S.Ct. 72, 67 L.Ed.2d 179 (1980) (Stevens, Circuit Justice).

Tryouts for the boys' basketball team at MacArthur took place on October 28, 1980 through October 30, 1980. Karen was not permitted to try out for the team and she voluntarily chose not to try out for the girls' team.

## II

### A

■ We can reverse the grant of a preliminary injunction only if "the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975). The district court's exercise of discretion in issuing a preliminary injunction is guided by four familiar factors:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.

*Reinders Bros. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 48 (7th Cir. 1980). The likelihood of success factor serves as a threshold requirement. We have held that if this factor is unsatisfied, and if the plaintiff has not shown irreparable injury, the court need go no further in denying the preliminary injunction. *Kolz v. Board of Ed. of City of Chicago,* 576 F.2d 747 (7th Cir. 1978). We conclude that the district court abused its discretion in issuing this preliminary injunction.

### B

■ To be constitutional, a gender-based discrimination must serve important governmental objectives. The discriminatory means employed must be substantially related to the achievement of those objectives. *Wengler v. Druggists Mutual Insurance Co.,* 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980); *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976).

■ Notwithstanding these well-settled standards of review, recently reaffirmed in *Michael M. v. Superior Court of Sonoma County,* — U.S. ——, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), Judge Marshall subjected the MacArthur program to strict scrutiny. He conceded that the "Supreme Court has been very reluctant to conclude that gender-based classifications are suspect." He nonetheless held that the right to personal development and the right to education were "fundamental rights" impinged by the MacArthur program, thus triggering strict scrutiny. He further found that the separation of boys' and girls' programs to prevent male domination of the sports program and to maximize participation in sports was a compelling state interest because it protected the girls' right to develop. He concluded, however, that the MacArthur program was not the least "restrictive way by which those interests can be protected." The court therefore found that Karen dem-

onstrated a likelihood of success on the merits.

Neither Judge Marshall nor plaintiff cite any authority to support the proposition that either education or the "right to develop" is a fundamental right. The Supreme Court has expressly rejected the notion that education is a fundamental right. *San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 29–39, 93 S.Ct. 1278, 1294–1300, 36 L.Ed.2d 16 (1972).

Were the law unsettled, we would have more difficulty finding an abuse of discretion here. Judge Marshall's decision, however, repudiates settled Supreme Court doctrine. Viewed under the correct standard, the main issue here is whether Karen O'Connor has demonstrated a reasonable likelihood that the two team approach is not substantially related to the objective of maximizing participation in sports, the avowed objective of the school board. We think she has failed. Unlike some interscholastic athletic programs,[2] the MacArthur program treats the two sexes identically—plaintiff concedes that the teams are equal in terms of funding, facilities, and other "objective" criteria. Both teams are interscholastic. "Separate but equal" teams have received endorsement in many circuits, including this one. *See Bucha v. Illinois High School Ass'n.*, 351 F.Supp. 69 (N.D.Ill.1972).

The only difference between the teams thus far adduced from the record is the level of competition. Since the boys' team is a better team, Judge Marshall concluded that the two teams were unequal because the girls' team would not foster development of Karen's skills. In *Leffel v. Wisconsin Interscholastic Athletic Ass'n.*, 444 F.Supp. 1117, 1121 (E.D.Wis.1978), Judge Gordon quickly dismissed an identical claim, stating, "[t]here are no allegations in the instant complaint that the defendants intentionally imposed different levels of competition on boys and girls. Any such differences arise from the abilities of the team members themselves."

We agree. At this stage in the proceedings, the defendants have demonstrated that their program substantially serves the objective of increasing girls' participation in sports.

Judge Marshall found the maximization of participation in sports to be a compelling state interest. It is therefore certainly an important governmental objective. In Judge Marshall's opinion, the MacArthur system was not the least restrictive alternative. Even he, however, conceded that the sex-based classification substantially furthered the governmental objective, thus satisfying the equal protection clause.

Judge Marshall's decision cannot be upheld on the basis of the alleged arbitrariness of the MacArthur program. As Justice Stevens held, in denying the application for a stay,

In my opinion, the question whether the discrimination is justified cannot depend entirely on whether the girls' program will offer Karen opportunities that are equal in all respects to the advantages she would gain from the higher level of competition in the boys' program. The answer must depend on whether it is permissible for the defendants to structure their athletic programs by using sex as one criterion for eligibility. If the classification is reasonable in substantially all of its applications, I do not believe that the general rule can be said to be unconstitutional simply because it appears arbitrary in an individual case.

*O'Connor v. Board of Education*, —— U.S. at ——, 101 S.Ct. at 75.

---

**2.** The programs challenged in the sports cases cited by appellee totally excluded women. *Hoover v. Meiklejohn*, 430 F.Supp. 164 (D.Colo. 1977); *Fortin v. Darlington Little League, Inc.*, 514 F.2d 344 (1st Cir. 1975); *Brenden v. Independent School District 742*, 477 F.2d 1292 (8th Cir. 1975); *Gomes v. Rhode Island Interscholastic League*, 469 F.Supp. 659 (D.R.I.1979), *vacated as moot*, 604 F.2d 733 (1st Cir. 1979);

*Leffel v. Wisconsin Interscholastic Athletic Ass'n.*, 444 F.Supp. 1117 (E.D.Wisc.1978). The school district in *Gomes* opted for a system of co-ed interscholastic teams, and an additional separate girls' team. Plaintiff argued that the *Gomes* system was the least restrictive alternative to promote the stated governmental objective. We express no opinion on the constitutionality of this alternative.

Karen has failed to show a reasonable likelihood of success on the merits of her equal protection claim. The same answer must obtain as to her remaining claims.

The total exclusion of boys from a girls-only sport does not violate the Illinois Constitution, which has been interpreted to regard sex as a suspect classification. Ill. Const. art. I, § 18; *Petrie v. Illinois High School Ass'n,* 75 Ill.App.3d 980, 31 Ill.Dec. 653, 394 N.E.2d 855 (Ill.App.1979); *People v. Ellis,* 57 Ill.2d 127, 311 N.E.2d 98 (Ill. 1974). It is highly unlikely, therefore, that Karen could demonstrate that the provision of separate teams for boys and girls violates the Illinois Constitution.

Nor can plaintiff establish a violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. Title IX aims to provide equal opportunity in educational programs without discrimination on the basis of sex. The MacArthur program appears to be in complete compliance with Title IX and the regulations promulgated thereunder. 45 C.F.R. § 86.41(b). Plaintiff's major challenge under this statute is the validity of the regulations, which expressly permit separate-sex teams and permit exclusion of girls from contact sports, including basketball. Plaintiff, however, presented no evidence at the hearing to support her claim that the regulations violate Title IX. Justice Stevens, in fact, stated that defendants' compliance with the regulations "indicate[s] a strong probability that the gender-based classification can be adequately justified." *O'Connor v. Board of Education,* —— U.S. at ——, 101 S.Ct. at 76. Here, too, plaintiff has failed to demonstrate a reasonable likelihood of success on the merits.[3]

■ Plaintiff's final claim is that she has been denied due process. She claims that Illinois has conferred a property right in educational development in Article X, Section 1 of the Illinois Constitution. Article X, Section 1, states in part:

... a fundamental goal of the people of the State of Illinois is the educational development of all persons to the limit of their capacity.

Article X, Section 1, of the Illinois Constitution "is a statement of general philosophy, rather than a mandate that certain means be provided in any specific form." *Pierce v. Board of Ed. of City of Chicago,* 69 Ill.2d 89, 12 Ill.Dec. 731, 732, 370 N.E.2d 535, 536 (1977). It therefore cannot form the basis of a protectable property interest.

Nor has the MacArthur program infringed any liberty interest of plaintiff. Only one court has found a liberty interest involved in similar circumstances. *Yellow Springs Exempted School District v. Ohio High School Athletic Association,* 443 F.Supp. 753 (S.D.Ohio 1978), *appeal pending,* Nos. 78–3131 and 3132 (6th Cir.). We decline to follow that decision. It is based on the irrebuttable presumption doctrine, which has been found to be co-extensive with the equal protection clause. *International Union, UAW v. Indiana Employment Security Board,* 600 F.2d 118 (7th Cir.), *cert. denied,* 444 U.S. 951, 100 S.Ct. 425, 62 L.Ed.2d 322 (1979); *Trafelet v. Thompson,* 594 F.2d 623, 630 (7th Cir.), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979). Having concluded that the MacArthur program does not violate equal protection, we cannot find it unconstitutional as creating an irrebuttable presumption. In sum, we believe Karen has failed to demonstrate a reasonable likelihood of success on the merits of her claims.

Nor has plaintiff made such a strong showing of irreparable injury that we might overlook the serious deficiencies of her case on the merits. The purpose of a preliminary injunction is to preserve the status quo. *EEOC v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir. 1980). We agree with Justice Stevens that "*if* Karen will probably succeed on the merits, she would suffer greater harm than would the defendants by allowing her to try out for the boys'

---

3. Section 27–1 of the Illinois School Code, Ill. Rev.Stat. ch. 122, § 27–1 (1979 Supp.), and its implementing guidelines permit separate teams for contact sports. The analysis under Title IX is fully applicable to the Illinois statute.

team." *O'Connor v. Board of Education,* —— U.S. at ——, 101 S.Ct. at 75 (emphasis added). We have found, however, that Karen has not demonstrated a reasonable likelihood that the program is unjustified. Karen was given the opportunity to play on the girls' team. The equality of the teams diminishes Karen's claim to injury, and her voluntary refusal to try out for that team was not the result of the defendants' actions.

We do not denigrate the potential harm to Karen from the defendants' refusal to let her try out for the boys' team. But we do not believe it justifies turning aside years of settled Supreme Court law after a hasty hearing on a preliminary injunction. While the full trial will allow a broader examination of her claims, she was not entitled to preliminary injunctive relief. The preliminary injunction is therefore dissolved. We remand for further proceedings consistent with our judgment.

REVERSED AND REMANDED.