Karen O'CONNOR, by her parents and next friends, Joseph O'Connor and Frances O'Connor, Plaintiffs,

v.

BOARD OF EDUCATION OF SCHOOL DISTRICT 23, a body politic and corporate, Dean Eitel, Sallyann Okuno, Jane Adelman, Susan Lewis, James Kastner, Ann Marie Lundstrom, and Mary Ann Stitak, as officers and members of the Board of Education of School District 23, Edward Grodsky, as Superintendent of School District 23, Gerald McGovern, as Assistant Superintendent of School District 23, Philip Arenstein, as Principal of MacArthur Junior High School, Mid-Suburban Junior High School Conference, and Robert D. White, an officer of the Mid-Suburban Junior High School Conference, Defendants.

No. 80 C 5660.

United States District Court, N. D. Illinois, E. D.

Aug. 12, 1982.

---

**3.** It is interesting to note that Grauso's opposition papers do not contest dismissal of the third counterclaim.

Andrew B. David, Rosemary J. Guadnolo, Arvey Hodes Costello & Burman, Chicago, Ill., for plaintiffs.

Robert A. Kohn, Robbins, Schwartz, Nicholas, Lifton & Taylor Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Karen O'Connor is an extraordinarily gifted basketball player. She is also female. Therein lies the problem which gave rise to the instant case.

Since she was seven years old, Karen has played on organized basketball teams with boys. She has participated in programs run by the YMCA, the Arlington Heights Park District, the Arlington Heights Youth Basketball Association, and in the NBA-Pepsi Hotshot competition in Indianapolis, Indiana, and the Elks Hoop Shoot Contest. During this period, the teams Karen has played on have won 97 and lost only 17 games, Karen has frequently been the team's leading scorer, and she has received numerous awards recognizing her abilities. She has also gone to summer basketball camps, where she has been coached by Oscar Robertson, Digger Phelps and Lou Henson.[1] In all of these programs, Karen

---

1. For the uninitiated, Oscar Robertson is the former Cincinnati Royals' star now in the National Basketball Association's hall of fame, and Richard "Digger" Phelps and Lou Henson are the widely respected basketball coaches at

played with boys. Karen has also played with boys in little league baseball and park district soccer and has excelled.

In the fall of 1980, Karen, now 11, enrolled in sixth grade at MacArthur Junior High School in Des Plaines, Illinois. She was then presented with her first opportunity to play interscholastic basketball (the lower grades do not have such teams). Naturally, she wanted to play with boys, feeling that only the boys' basketball team could provide her with a level of competition sufficiently high to enable her to develop her skills. As a result, Karen's father requested that she be permitted to try out for the boys' basketball team. Defendants in this case, the principal of the school, the superintendent and board of the school district which encompasses MacArthur, and the president of the principals' board of the Mid-Suburban Conference, an association of six schools organized to promote interscholastic activities to which the school belongs, all denied Karen permission to do so.

Karen and her parents then filed the instant action, seeking injunctive relief requiring defendants to permit her to try out for the boys' team. Tryouts were scheduled for Monday, October 27, 1980. Accordingly, on Thursday, October 23, following an emergency adversary hearing, we rendered an oral opinion, which is attached as an appendix, and granted a preliminary injunction requiring defendants to allow Karen to participate in the tryouts. We denied defendants a stay pending appeal. Defendants then postponed the tryouts,[2] appealed the preliminary injunction, and sought a stay of the injunction from the United States Court of Appeals for the Seventh Circuit. On October 27, a divided panel of the court of appeals issued a stay without stating reasons. On October 29, on rehearing en banc, the court voted five to three to continue the stay, again without stating reasons. Karen then applied to Justice Ste-

vens, as Circuit Justice, to vacate the stay. In a written opinion, Justice Stevens denied her application. *O'Connor v. Board of Education*, 449 U.S. 1301, 101 S.Ct. 72, 66 L.Ed.2d 179 (Stevens, Circuit Justice, 1980). The court of appeals subsequently reversed this court's entry of the preliminary injunction. *O'Connor v. Board of Education*, 645 F.2d 578 (7th Cir.), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). The case is now before us on defendants' motion for summary judgment under Fed. R.Civ.P. 56.[3]

We turn first to Karen's claim that she has been denied the equal protection of the laws in violation of the fourteenth amendment because defendants have subjected her to discrimination on the basis of her sex. Defendants concede that their refusal to permit Karen to try out for the boys' team is premised solely on her sex. When the state treats persons differently because of their sex, scrutiny of the differential treatment is required under the equal protection clause. *Orr v. Orr*, 440 U.S. 268, 278–79, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979); *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1977); *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). As the court of appeals observed in the earlier appeal, "To be constitutional, a gender-based discrimination must serve important governmental objectives. The discriminatory means must be substantially related to the achievement of those objectives." 645 F.2d at 580. *See Mississippi University for Women v. Hogan*, —— U.S. ——, ——, ——, 102 S.Ct. 3331, 3334–36, 73 L.Ed.2d 1090 (1982); *Wengler v. Druggists Mutual Insurance Co.*, 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980); *Caban v. Mohammad*, 441 U.S. 380, 388, 99 S.Ct. 1760, 1765, 60 L.Ed.2d 297 (1979); *Orr v. Orr*, 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979); *Califano v. Webster*, 430 U.S. 313,

---

the University of Notre Dame and University of Illinois, respectively.

**2.** No allegation was made that the postponement was contumacious. As we recall, fortuitously the gymnasium was not available for

tryouts in basketball because rain postponed an earlier scheduled outdoor event.

**3.** The case is not moot, since Karen now seeks to try out for the boys' team in the fall of 1982.

316–17, 97 S.Ct. 1192, 1194–95, 51 L.Ed.2d 360 (1977); *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1977). In this case, there is no dispute as to what the governmental objectives are behind defendants' gender-based actions, or how their actions relate to the objectives.

■ Defendants' refusal to allow Karen to try out for the boys' team stems from their policy of maintaining separate basketball teams for boys and girls. Plaintiffs concede that defendants do this in order to maximize the participation of both sexes in interscholastic sports. Plaintiffs also concede that defendants' separate team policy is substantially related to this goal. Since boys, on the whole, are substantially better basketball players than are girls, then, in the words of Justice Stevens, "[w]ithout a gender-based classification ... there would be a substantial risk that boys would dominate the girls' program and deny them an equal opportunity to compete in interscholastic events." 449 U.S. at 1307, 101 S.Ct. at 75.[4] By maintaining separate programs, defendants enable girls to participate in interscholastic sports. On the other hand, defendants concede that their policy is arbitrary as applied to Karen. No claim is made that considerations of administrative convenience, prevention of harm to Karen or the boys in the program, or any other legitimate interests justify excluding Karen as a particular individual from the boys' tryouts. Neither do defendants dispute Karen's claim that only participation on the boys' team will provide her with a level of competition suited to her level of skills, and her needs for developing those skills. In short, defendants concede that there is no reason to keep Karen off the team apart from the general policy of separate teams. The parties' disagreement is limited to the question whether defendants' policies need be justified only in terms of the differences between the sexes as a whole, or whether they must also be justified as applied to Karen's particular case.

Defendants' policy of providing separate teams for boys and girls is bottomed on a generalization about the relative basketball skills of boys and girls. Karen does not dispute the general validity of this generalization, though she does argue that it is not true of her. The Supreme Court has repeatedly indicated that even where generalizations about the differences between the sexes enjoy a substantial basis in fact, they nevertheless tend to be overbroad, and therefore constitute forbidden sex discrimination. *See Wengler v. Druggists Mutual Insurance Co.*, 446 U.S. 142, 151–52, 100 S.Ct. 1540, 1546–47, 64 L.Ed.2d 107 (1980); *Califano v. Wescott*, 443 U.S. 76, 88–89, 99 S.Ct. 2655, 2662–63, 61 L.Ed.2d 382 (1979); *Caban v. Mohammad*, 441 U.S. 380, 388–89, 99 S.Ct. 1760, 1765–66, 60 L.Ed.2d 297 (1979); *Orr v. Orr*, 440 U.S. 268, 280–82, 99 S.Ct. 1102, 1112–13, 59 L.Ed.2d 306 (1979); *Califano v. Goldfarb*, 430 U.S. 199, 206–07, 217, 97 S.Ct. 1021, 1026–27, 1032, 51 L.Ed.2d 270 (1977); *Craig v. Boren*, 429 U.S. 190, 201–02 & n. 13, 97 S.Ct. 451, 461–59 & n. 13, 50 L.Ed.2d 397 (1977).[5] In light of the Supreme Court's view of the treacherous nature of generalizations about the sexes, it

---

**4.** Plaintiff has produced no evidence, and therefore raised no issue of fact, regarding defendants' position that the boys' and girls' sports teams at MacArthur are equal in terms of funding, facilities, and other "objective" criteria. The record supports defendants' assertion that the teams are "separate but equal."

**5.** Of course, distinctions between the sexes may be drawn when they truly are based on real distinctions that are invariably true. *See, e.g., Rostker v. Goldberg*, 453 U.S. 57, 72–83, 101 S.Ct. 2646, 2655–2661, 69 L.Ed.2d 478 (1981) (Women need not register for the draft as they are ineligible for combat duty.); *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 471–76, 101 S.Ct. 1200, 1205–08, 67 L.Ed.2d 437 (1981) (plurality opinion) (Sexes are not similarly situated with respect to statutory rape, since only women can become pregnant.); *Parham v. Hughes*, 441 U.S. 347, 354–57, 99 S.Ct. 1742, 1747–48, 60 L.Ed.2d 269 (1979) (plurality opinion) (Sexes are not similarly situated with respect to the right to recover for wrongful death of an illegitimate child, since under state law only the father can legitimate a child.); *Schlesinger v. Ballard*, 419 U.S. 498, 508, 95 S.Ct. 572, 577, 42 L.Ed.2d 610 (1974) (Male and female naval officers are not similarly situated with respect to opportunity for promotion, since women are ineligible for sea duty.).

might be inappropriate to apply the generalization without regard for the individual case. *Cf. Cleveland Board of Education v. Lafleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (Generalizations about the ability of pregnant teachers to work after a certain point in their pregnancy are sufficiently treacherous so that they should not be the basis of a mandatory leave policy without opportunity to prove the policy does not apply to a specific case.). *See also Turner v. Department of Employment Security*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This approach is often called the "irrebuttable presumption doctrine," and its most vigorous advocate is Professor Tribe.

> [A]s with any rule described as an irrebuttable presumption, it would of course be possible to defend the challenged regulation on the ground that it "presumes" nothing but simply chooses one substantive policy over another. For this reason, in fact, most commentators have regarded the Court's invocation of the irrebuttable presumption doctrine as analytically confused and ultimately unhelpful. All the Court is really condemning when it invalidates an irrebuttable presumption, one may argue, is a substantive rule it deems impermissibly overinclusive.
>
> There is some truth in the criticism, but it also misses an important point. For when the Court strikes down a rule as fatally overinclusive, it *may* be suggesting that the state is forbidden to make *any use at all* of the factor that led to the rule's condemnation. The special feature of an invalidation employing the irrebuttable presumption doctrine is that it ordinarily suggests, on the contrary, that the state may be free to use the factor *so long as it does not give that factor conclusive force.* Thus, precisely because the Court has applied the irrebuttable presumption doctrine only in situations where intermediate or strict scrutiny was independently warranted either by the involvement of a sensitive classification or by the presence of an important liberty or benefit, the doctrine has become any-

thing but an "engine of destruction for countless legislative judgments." Instead, it has served only as a modest addition to the set of intermediate remedies where the alternative, in its absence, might have been a more drastic form of invalidation.

L. Tribe, American Constitutional Law § 16–32 at 1095–96 (1978) (emphasis in original) (footnotes omitted) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975)). Here, because gender discrimination is involved, intermediate scrutiny, requiring a substantial relation to an important governmental interest, is required, and the generalization at issue may be sufficiently treacherous, in light of the questionable significance of the physical differences between boys and girls Karen's age, *see Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association*, 647 F.2d 651, 656–57 (6th Cir. 1981); *Fortin v. Darlington Little League, Inc.*, 514 F.2d 344, 349–51 (1st Cir. 1975); *Hoover v. Meiklejohn*, 430 F.Supp. 164, 169 (D.Colo.1977); *National Organization for Women v. Little League Baseball, Inc.*, 127 N.J.Super. 522, 318 A.2d 33 (1975); Comment, *Sex Discrimination in High School Athletics*, 25 Syracuse L.Rev. 535, 548–51 (1974); Comment, *Implementing Title IX: The HEW Regulations*, 124 U.Pa.L.Rev. 806, 838–39 (1976) [hereinafter cited as Comment, *Implementing Title IX*], that the generalization, while having substantial validity, should not be given conclusive weight in light of the Supreme Court's suspicion of such usually but not always valid generalizations about sex. *See Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association*, 443 F.Supp. 753, 758–59 (S.D.Ohio 1978), *rev'd in part and remanded*, 647 F.2d 651 (6th Cir. 1981). *See generally Crawford v. Cushman*, 531 F.2d 1114 (2d Cir. 1976); *Andrews v. Drew Municipal Separate School District*, 507 F.2d 611 (5th Cir. 1975); Note, *Sex Discrimination in High School Athletics*, 57 Minn.L.Rev. 339 (1972); Note, *Irrebutable Presumption Doctrine Applied to State and*

*Federal Regulations Excluding Females from Contact Sports*, U.Dayton L.Rev. 197 (1979).[6]

In this case, however, plaintiff has raised no issue of fact as to the treachery of the generalization in question. Plaintiff never disputes defendants' assertion that boys Karen's age are substantially better than girls at basketball, an assertion borne out by the evidentiary materials presented at the hearing on the preliminary injunction. Plaintiff has never attempted to prove that the generalization is sufficiently unreliable so that it should not be given conclusive weight. Plaintiff only attempts to prove that the generalization is arbitrary as applied to her. However, proof that the generalization does not apply to Karen's particular case, in itself, does not raise an equal protection claim under the court of appeals' opinion in this case.

Judge Marshall found the maximization of participation in sports to be a compelling state interest. It is therefore certainly an important governmental objective. In Judge Marshall's opinion, the MacArthur system was not the least restrictive alternative. Even he, however, conceded that the sex-based classification substantially furthered the governmental objective, thus satisfying the equal protection clause.

Judge Marshall's decision cannot be upheld on the basis of the alleged arbitrariness of the MacArthur program. As Justice Stevens held, in denying the application for a stay,

In my opinion, the question whether the discrimination is justified cannot depend entirely on whether the girls'

program will offer Karen opportunities that are equal in all respects to the advantages she would gain from the higher level of competition in the boys' program. The answer must depend on whether it is permissible for the defendants to structure their athletic programs by using sex as one criterion for eligibility. *If the classification is reasonable in substantially all of its applications, I do not believe that the general rule can be said to be unconstitutional simply because it appears arbitrary in an individual case.*

645 F.2d at 581 (emphasis supplied) (quoting 449 U.S. at 1306, 101 S.Ct. at 75 (footnote deleted from original)).

Here plaintiff has not raised an issue of fact as to whether the generalization which underlies defendants' actions is "reasonable in substantially all of its applications." The only thing she attempts to prove is that the generalization does not apply to her. That is not enough. Without offering any evidence indicating that the generalization is too treacherous to be given conclusive weight, plaintiff cannot raise an issue of fact as to the validity of defendants' policy. Evidence which proves nothing more than the arbitrariness of defendants' actions in Karen's particular case is insufficient under the court of appeals' view of the case. Because plaintiff does not dispute defendants' generalization about the relative basketball skills of boys and girls, or that the generalization is substantially related to an important governmental interest, defendants are entitled to summary judgment on plaintiff's equal protection claim.[7]

**6.** The doctrine would not necessarily mean that defendants' refusal to permit boys to try out for the girls' team would fall as an irrebuttable presumption. To the contrary, the generalization that if boys could participate on girls' teams, they would soon dominate the teams and subvert the important governmental interest in maximizing participation by both sexes is almost certainly sufficiently valid to be given conclusive weight, while the converse may not be.

**7.** The weight of authority supports the constitutionality of "separate but equal" sports

teams for males and females. *See O'Connor v. Board of Education*, 645 F.2d 578 (7th Cir.), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); *Cape v. Tennessee Secondary School Athletic Association*, 563 F.2d 793 (6th Cir. 1977) (per curiam); *Lafler v. Athletic Board of Control*, 536 F.Supp. 104 (W.D.Mich. 1982); *Leffel v. Wisconsin Interscholastic Ass'n*, 444 F.Supp. 1117, 1121 (E.D.Wis.1978); *Hoover v. Meiklejohn*, 430 F.Supp. 164, 170 (D.Colo.1977) (dictum); *Ritacco v. Norwin School District*, 361 F.Supp. 930 (W.D.Pa. 1973); *Petrie v. Illinois High School Ass'n*, 75 Ill.App.3d 980, 987–89, 31 Ill.Dec. 653, 660–61,

■ Plaintiff also challenges her exclusion from the tryouts under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–83 (1976) and the regulations thereunder.[8] In particular, plaintiff relies on the regulations promulgated by the United States Department of Health, Education and Welfare (now the United States Department of Education) concerning sex discrimination in athletics.[9] The regulation deserves to be quoted in full.

(a) *General.* No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

(b) *Separate Teams.* Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport. For the purpose of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose of major activity of which involves bodily contact.

394 N.E.2d 855, 861–62 (1979). *See also Yellow Springs Exempted Village School District Bd. of Educ. v. Ohio High School Athletic Ass'n.,* 647 F.2d 651 (6th Cir. 1981) (discussing but not deciding the question). *But see id.* at 661–69 (Jones, J., concurring in part and dissenting in part); *Gomes v. Rhode Island Interscholastic League,* 469 F.Supp. 659 (D.R.I.) (granting preliminary injunction), *vacated as moot,* 604 F.2d 733 (1st Cir. 1979); *Yellow Springs,* 443 F.Supp. 753 (S.D.Ohio 1978), *rev'd in part and remanded,* 647 F.2d 651 (6th Cir. 1981); *Darrin v. Gould,* 85 Wash.2d 859, 540 P.2d 882 (1975).

**8.** Plaintiff has a private right of action to enforce Title IX. *See Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The court of appeals for this circuit has held that Title IX only prohibits intentional discrimination on the basis of sex. *See Cannon v. University of Chicago,* 648 F.2d 1104 (7th Cir.), *cert. denied,* — U.S. —, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). Here there is no dispute that defendants "intentionally" excluded Karen from the tryouts on the basis of her sex.

**9.** There is some dispute as to whether the regulation is even applicable to this case. The regulations, after defining "recipient" to include the defendant school board, *see* 45 C.F.R. § 86.2(h) (1981), and "federal financial assistance" to include the federal funds which the defendant school board receives, *see id.* § 86.2(g), provide that the regulations apply "to every recipient and to each education program or activity operated by such recipient which receives or benefits from Federal financial assistance." *Id.*

§ 86.11. The Supreme Court has recently upheld the regulations, although it construed them to be "program specific," meaning that the particular program or activity accused of sex discrimination must receive or benefit from federal financial assistance. *See North Haven Bd. of Educ. v. Bell,* — U.S. —, 102 S.Ct. 1912, 1925–28, 72 L.Ed.2d 299 (1982). Here, plaintiffs allege that defendants receive federal funds which are used to support interscholastic athletics at MacArthur. Complaint ¶ 5. Defendants' pleadings indicate that while they do receive federal funds, these monies are not used for MacArthur's interscholastic sports programs. Answer of Certain Defendants ¶ 5. On the record currently before the court, we believe defendants are not entitled to summary judgment on the ground that the regulation is inapplicable, for three reasons. First, neither side has submitted affidavits in support of its contention on this issue; both have merely rested on the pleadings. Thus, the record is inadequate to resolve the factual dispute contained in the pleadings. Second, defendants' pleadings and answers to interrogatories state only that MacArthur's interscholastic programs do not directly receive federal funds, but do not address the question whether they "benefit[ ] from Federal financial assistance" within the meaning of the regulations. Third, both the court of appeals and Justice Stevens seemed to hold, sub silentio, that the regulations do apply to the MacArthur program. *See* 449 U.S. at 1307–08, 101 S.Ct. at 75–76; 645 F.2d at 582. As a result, the law of the case may be that the regulations do apply to the MacArthur program.

(c) *Equal Opportunity.* A recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes. In determining whether equal opportunities are available the Director will consider, among other factors:

(1) Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

(2) The provision of equipment and supplies;

(3) Scheduling of games and practice time;

(4) Travel and per diem allowance;

(5) Opportunity to receive coaching and academic tutors;

(6) Assignment and compensation of coaches and tutors;

(7) Provision of locker rooms, practice and competitive facilities;

(8) Provision of medical and training facilities and services;

(9) Provision of housing and dining facilities and services;

(10) Publicity.

Unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams if a recipient operates or sponsors separate teams will not constitute noncompliance with this section, but the Director may consider the failure to provide necessary funds for teams for one sex in assessing equality of opportunity for members of each sex.

45 C.F.R. § 86.41(a)–(c) (1981).

Plaintiff admits, as she must, that she can find no comfort in paragraphs (a) and (b) of the regulation, which expressly permit separate teams for girls and boys in basketball. Rather, plaintiff relies on (c)(1), arguing that her exclusion from the boys' team does not effectively accommodate her interests and abilities, since only competition on the boys' team can provide her with a suitable level of play. However, examination of the history of (c)(1) makes it clear that nothing in (c) can be construed to require that talented women be permitted to try out for men's teams. To the contrary, HEW made it clear, when promulgating the regulation, that it only required institutions to effectively accommodate the interests and abilities of both sexes when deciding what sports and types of teams to offer. The regulation permits institutions to offer separate teams; it merely required the institution, when selecting which teams it will sponsor, to take into account the interests and abilities of both sexes to ensure that equal opportunity is provided. However, HEW did not intend to require that boys' teams be opened to girls. To the contrary, HEW envisioned that institutions would comply with (c)(1) by doing precisely what defendants have done: providing separate but equal teams.

In response to the comments, while paragraph 86.41(a) remains substantially the same as its predecessor, the remainder of the athletics section has been changed. Paragraph 86.38(b) of the proposed regulation required an annual determination of student interest by a recipient. This provision was widely misinterpreted as requiring institutions to take an annual poll of the student body and to offer all sports in which a majority of the student body expressed interest and abolish those in which there is no interest. The Department's intent, however, is to require institutions to take the interests of both sexes into account in determining what sports to offer. As long as there is no discrimination against members of either sex, the institution may offer whatever sports it desires. The "determination of student interest" provision has been removed. A new paragraph 86.-41(c)(i) [sic] requires institutions to select "sports and levels of competition which effectively accommodate the interests and abilities of members of both sexes." In so doing, an institution should consider by a reasonable method it deems appropriate, the interests of both sexes.

. . . . .

Thus, an institution would be required to provide separate teams for men and

women in situations where the provision of only one team would not "accommodate the interests and abilities of both sexes."

40 Fed.Reg. 24, 134 (1975). Thus, (c)(1) envisions, rather than prohibits, MacArthur's separate teams for boys and girls. Defendants have not violated the Title IX regulations. *See* 449 U.S. at 1301, 101 S.Ct. at 72, 66 L.Ed.2d at 179; *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association*, 647 F.2d 651 (6th Cir. 1981); 645 F.2d at 582; *Mularadelis v. Haldane Central School Board*, 74 A.D.2d 248, 427 N.Y. S.2d 458 (1980); *Forte v. Board of Education*, 105 Misc.2d 36, 431 N.Y.S.2d 321 (N.Y. Sup.Ct.1980); Cox, *Intercollegiate Athletics and Title IX*, 46 Geo.Wash.L.Rev. 34, 48 (1977); Commentary, *Sex Discrimination in Athletics: Conflicting Legislative and Judicial Approaches*, 29 Ala.L.Rev. 390, 407–09, 421 (1978); Comment, *Implementing Title IX, supra* p. 6, at 833–41.[10] As a result, plaintiff's statutory claim fails.[11]

Defendants' motion for summary judgment is granted.[12] Judgment to enter dismissing plaintiff's action with costs to defendants.

### APPENDIX

THE COURT: The rather severe time constraints that we are all operating under render it almost impossible for me to write anything for you, and I am fearful that it may make almost impossible any clear-cut or articulated thread that will run through the remarks that I am going to make now.

But what I say at this time will stand as my findings of fact and conclusions of law with respect to the motion for the preliminary injunction, and also will stand as the reasons for my decision under Rule 52(a) and 65(d) of the Federal Rules of Civil Procedure.

The facts in the case are, as I see them, relatively undisputed, and I think that the beginning point in any analysis of the problem is that the case law has evolved consistently along the lines that under the equal protection clause state educational institutions and agencies thereof, such as are involved in this case, may not deny a female the opportunity to participate in so-called contact sports, and particularly the sport which is before me today, basketball, merely because of their gender.

Females cannot be entirely excluded from this type of activity just because they are females.

And the cases are consistent as they have been cited in the briefs of both parties that where there is only one team, girls or women must be permitted to try out for that one team in competition with the boys or the men.

In recognition of that, as well as the—as Title 9, and the regulations adopted pursuant thereto, and also certain state law, which is implicated in this case, schools have been encouraged by both state and federal officials to create a dual track for interscholastic athletic competition, and that's what's involved in this case.

The defendants take the position that the dual track satisfies the equal protection argument advanced by the plaintiffs which I believe to be their strongest argument, although I must say that I found—I found quite understanding Judge Rubin's opinion in the Yellow Spring School District case,

---

**10.** This might be a different case if MacArthur wanted to allow Karen to participate on the boys' team but was precluded from doing so by the Mid-Suburban Conference's rules. *See Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association*, 647 F.2d 651 (6th Cir. 1981).

**11.** Plaintiff does not advance the argument, forwarded by some commentators, that HEW's athletic regulations violate Title IX and the Constitution. *See* Cox, *supra* at 44–48, 59–60;

Todd, *Title IX of the 1972 Education Amendments: Preventing Sex Discrimination in Public Schools*, 55 Tex.L.Rev. 103, 113–19 (1975); Note, *Sex Discrimination and Intercollegiate Athletics: Putting Some Muscle on Title IX*, 88 Yale L.J. 1254 (1979).

**12.** Because we have dismissed plaintiff's federal claims prior to trial, we will not exercise pendant jurisdiction over her state law claims, and dismiss those as well.

and he, of course, predicates his decision upon a due process concept.

The defendants in essence assert that they have lawfully or constitutionally provided a separate but equal program for Karen O'Connor and others of her gender, and that it is constitutionally permissible that her interscholastic competition be limited to that alleged separate but equal program.

I find great difficulty with accepting the equality phase of that formula.

Indeed, I have that difficulty in light of the facts which we discussed just prior to the recess, and which in essence I said I would judicially notice, and that is that in any given group today, of women and men, or boys and girls of the same general age and level of experience, that the men in activities of the type involved here will dominate or will excel, or will perform at a higher level.

Inherent in that, it appears to me, are the facts which dispel the equality of the separate but equal approach.

What we are principally concerned with here, at this level of—or at this age level particularly—we are not trying to forecast whether Karen O'Connor is going to be able to play in the N.B.A. Without intending in any way to be facetious, we can all agree that she's going to have to grow a little taller before she could go in the N.B.A. And she may not turn out to be a female of tall stature.

What we are looking at now with this young person is skill development. She has particular physical attributes, and she wants to develop them to their highest level, at least this is her ambition at this point in her life.

From what I know, and I think it is appropriate in the context of an application for preliminary relief for me to take into account my experiences in life, not as a witness but just as life has passed me by or as I have observed it, when you are dealing with physical skill development of this type, the level of competition in which you are permitted to participate has a direct bearing upon your development.

If you are permitted to compete or participate only with those of lower skills than yours, you are not challenged to the next level of performance.

And that's the situation in which Karen O'Connor now finds herself.

She has, from all that has been presented here, surpassed her peer group, her gender and age peer group. And while she will be self-motivated perhaps to attain yet a higher level of the perfection or development of her skills, she is being deprived because of her gender of the opportunity to compete with those who are at or superior to her so that she can in turn improve her own skills commensurate with theirs, or as stimulated by theirs.

And, so it is my opinion, as I hear the case on a motion for a preliminary injunction, that Karen O'Connor has shown a strong likelihood of success with respect to the equality in the separate but equal formula which is just all a long-winded way of saying that these are not equal programs.

And the mere facts that they are coached comparably, have comparable physical plants, comparable schedules, et cetera, does not render them equal.

Now, that, of course, is just a beginning point.

If we conclude that they were in fact equal, that might be the end of the discussion, although I have some doubts about that.

But concluding that they are not equal, we now have to turn to the question of well, is it nonetheless appropriate for these state instrumentalities to so classify her based on her gender?

I suppose I am obliged under the present state of authorities to get into this thicket of fundamental right versus nonfundamental right or interest and suspect classifications versus non-suspect classifications.

It's pretty clear that the United States Supreme Court has been very reluctant to conclude that gender-based classifications are suspect.

My contemporary, Judge Match, in his opinion in Hoover against Meiklejohn traces the history of it all fairly well. I don't know that I agree with him when he hypothesizes why the Court has been reluctant to characterize sex classification or gender classification as suspect in his hypothetical about public toilets.

But he traces it, and I am content today to live with the proposition that gender-based classifications are not inherently suspect.

That's just a part of it, though, because the next inquiry is whether some fundamental right is implicated in what this young woman or young girl wants to do.

It's pretty simple to say, well, you don't have a fundamental right to play basketball. But I do believe that you do have a fundamental right to develop emotionally and to develop your intellectual talents and to develop your physical talents and skills, and I think the three intermesh, and they all involve person development.

I think that we do have a fundamental right to develop our persons and our being.

Indeed, I don't know of a more fundamental right than the right to develop one's being.

And I think that's what's involved here. I believe that indeed our educators recognize this when they devote the substantial resources and energies to intramural and interscholastic athletic programs.

This must be in recognition of the fact that there is a place for those activities in the life of the developing child.

And, from what little I have read in this case, I get the impression that today—and it's been awhile since I have been involved in rearing children of this age—that today perhaps more resources on a comparative basis are devoted to these activities in the grade and junior highs than in the high schools and in the colleges and a greater percentage of people engage in them, in the younger ages.

I have observed that over the years, that a far greater percentage of youngsters engage in some form of competitive athletics in the grade school ages, and then as they grow older they drop by the wayside.

I think for the purposes of this preliminary injunction hearing, that I am not afield when I say that the right to develop is a fundamental right, the right to education is a fundamental right, and the right to the constituent elements of an education are fundamental rights, and that in our society today, the activities that are here—that we are here concerned with are constituent elements of Karen O'Connor's education, and, therefore, she is being deprived or is being classified in respect to a fundamental right.

This being so, we are told by the Supreme Court that we are to strictly scrutinize the classification and determine whether it is justified by a compelling state interest, and that necessarily implicates whether there is a less restrictive device available.

I have reached the conclusion that there is a reasonable likelihood that Karen O'Connor will succeed on the merits on that issue.

I suppose inherent in what I have said thus far is that there is a reasonable likelihood that she will succeed on the other issues as well.

But this issue, I think, is the most difficult in the case. In light of the facts which we judicially noticed, and to which I have referred, I recognize that there is a risk of boys flooding into girls programs and dominating them, and I have just given substantial constitutional stature to the activities that this plaintiff wishes to engage in, and the protection of those activities for others is certainly a substantial or legitimate state interest, and my own view is that the protection of those fundamental rights for others is a compelling state interest.

The real question is: Is this the only way or the least restrictive way by which those interests can be protected for others?

And, as I sit here today, I am not persuaded that it is.

Accordingly, I have reached the conclusion that Ms. O'Connor, by her parents, has demonstrated a reasonable likelihood that

she will succeed on the merits of her equal protection claim.

I have already spoken during colloquy with counsel of the fact that in balancing the interests, I believe that she prevails on that, and that she does not have an adequate remedy at law, and that it is not contrary to the public interest to grant her preliminary injunctive relief.

Accordingly, the motion for a preliminary injunction is granted, and I would think that it would be a simple matter, Ms. Guadnolo, if you have not already prepared one, to prepare an appropriate preliminary injunctive order directing the defendants to permit her to participate when the matter comes to a head on Monday.