COMMODITY FUTURES TRADING COMMISSION
ET AL. *v.* BRITISH AMERICAN COMMODITY
OPTIONS CORP. ET AL.

No. A–86 (77–96). Decided August 8, 1977

MR. JUSTICE MARSHALL, Circuit Justice.

The Solicitor General, on behalf of the Commodity Futures Trading Commission and its members, has applied to me as Circuit Justice to vacate stays of mandate entered by the United States Court of Appeals for the Second Circuit pending applications for certiorari by the respondents herein. The stays have the consequence, for their limited duration, of preventing a Commission regulation that has yet to be enforced, Rule 32.6, 17 CFR § 32.6 (1977), from going into effect. The regulation, promulgated under the Commodity Futures Trading Commission Act of 1974 (CFTA), 88 Stat. 1389, 7 U. S. C. §§ 1–22 (1970 ed. and Supp. V), would require commodity options dealers to segregate in special bank accounts 90% of the payments made by each of their customers until such time as the customer's rights under his options are exercised or expire. Having examined the written submissions of the Solicitor General and the responses thereto, I have concluded that this case does not present the exceptional circumstances required to justify vacation of the stays.

## I

Prior to the enactment of CFTA, trading in options on certain agricultural commodities was prohibited under § 4c of the Commodity Exchange Act, 49 Stat. 1494, 7 U. S. C. § 6c, but options transactions in other commodities were wholly unregulated. Unsound and fraudulent business practices developed with respect to the unregulated options, and at least one major dealer went bankrupt, causing substantial losses to investors. In order to prevent such abuses in the future, CFTA created the Commission as an independent regulatory body and gave it the power to prohibit or regulate options transactions in the previously unregulated commodities. See 7 U. S. C. § 6c (a) (1970 ed., Supp. V).

Pursuant to this authority, the Commission immediately adopted an antifraud rule, and on November 24, 1976, after informal rulemaking proceedings, the Commission promulgated a comprehensive set of regulations that included the segregation requirement at issue in this application. The latter set of regulations also included provisions requiring options dealers (1) to be registered with the Commission; (2) to maintain certain minimum amounts of working capital; and (3) to provide customers with disclosure statements setting forth information about commissions and fees and explaining the circumstances under which customers would be able to make a profit. The segregation requirement was to go into effect on December 27, 1976; the other regulations were to take effect variously on December 9, 1976, and January 17, 1977.

Respondents, the National Association of Commodity Options Dealers (NASCOD) and a number of its members, brought suit in the United States District Court for the Southern District of New York, seeking pre-enforcement review of the November 24 regulations. The Commission defended the segregation requirement as a reasonable means of protecting investors in the event that a dealer holding

options on their behalf becomes insolvent or otherwise unable to execute the options; presumably, the investors could at least recoup most of their initial outlay from the segregated fund. But respondents argued that the rule would drive them out of business;* was unnecessary in light of other existing safeguards; and might not even be effective in facilitating return of customers' investments should a dealer go bankrupt.

The District Court concluded that the segregation rule threatened respondents with irreparable harm and that respondents had a reasonable likelihood of success in having it overturned as arbitrary and capricious. Accordingly, on December 21, 1976, six days before the rule was to go into effect, the District Court preliminarily enjoined its enforcement. At the same time it granted summary judgment in favor of the Commission as to the remainder of respondents' claims, and the other regulations went into effect as scheduled.

On cross-appeals, the Court of Appeals reversed the order insofar as it granted a preliminary injunction, holding "that the Commission's decision to impose a segregation requirement was a reasonable exercise of its discretion in an effort to protect the public," and affirmed the District Court in all other respects. *British American Commodity Options Corp.* v. *Bagley,* 552 F. 2d 482, 490–491 (1977). This decision was

---

*Respondents deal in "London options," which are options on futures contracts traded on various exchanges in London, England. American customers make cash payments to individual respondents, in amounts equal to the sum of the "premium" (the price charged for the option in London) and the respondent's commission and fees. The respondents then forward the premium to a "clearing member" of the London exchange, who purchases the option for the account of the respondents. When the customer wishes to exercise the option, he informs the respondent dealer, who in turn informs the clearing member in London.

The customers' cash payments can be segregated or used to pay the premiums in London, but not both. Since respondents apparently cannot supply the additional cash from internal sources, they would have to borrow. They claim that they would be unable to obtain such loans and would consequently be forced out of business.

announced on April 4, 1977, and rehearing was denied on June 6, 1977. Respondents then moved the Court of Appeals, under 28 U. S. C. § 2101 (f) and Fed. Rule App. Proc. 41 (b), to stay its mandate pending applications to this Court for certiorari. On June 14, 1977, the members of the panel that had decided the case granted stays to respondents NASCOD, British American Commodity Options Corp. (British American), and Lloyd, Carr & Co. (Lloyd, Carr), conditional in the cases of British American and Lloyd, Carr on the posting of bonds in the amounts suggested in their motion—$250,000 for British American and $100,000 for Lloyd, Carr. On June 15, the Commission moved the Court of Appeals to reconsider the amounts of the bonds set in the June 14 order, but this motion was denied by the panel on June 24. On July 8 the panel granted stays of mandate to four additional NASCOD members, again conditional on posting of security, and this time the court ordered amounts greater than had been suggested with respect to three of the four firms. The instant application to vacate the stays entered on June 14 and July 8 was filed on July 25.

## II

There is no question as to the power of a Circuit Justice to dissolve a stay entered by a court of appeals. See, e. g., *New York* v. *Kleppe,* 429 U. S. 1307, 1310 (1976) (MARSHALL, J., in chambers); *Holtzman* v. *Schlesinger,* 414 U. S. 1304, 1308 (1973) (MARSHALL, J., in chambers); *Meredith* v. *Fair,* 83 S. Ct. 10, 9 L. Ed. 2d 43 (1962) (Black, J., in chambers). "But at the same time the cases make clear that this power should be exercised with the greatest of caution and should be reserved for exceptional circumstances." *Holtzman* v. *Schlesinger, supra,* at 1308. Since the Court of Appeals was quite familiar with this case, having rendered a thorough decision on the merits, its determination that stays were warranted is deserving of great weight, and should be overturned only if the court can be said to have abused its discretion. See, e. g., 414

U. S., at 1305; *Magnum Import Co.* v. *Coty,* 262 U. S. 159, 163–164 (1923).

It is well established that the principal factors to be considered in evaluating the propriety of a stay pending application for certiorari and, correspondingly, whether to vacate such a stay granted by a court of appeals, are the "balance of equities" between the opposing parties, and the probability that this Court will grant certiorari. See, *e. g., Beame* v. *Friends of the Earth, ante,* p. 1310 (MARSHALL, J., in chambers); *Holtzman* v. *Schlesinger, supra,* at 1308–1311; *Meredith* v. *Fair, supra.* The relative weight of these factors will, of course, vary according to the facts and circumstances of each case.

As to the equities here, it is important to note that the stays entered by the Court of Appeals merely preserve the regulatory status quo pending final action by this Court. Options dealers were never in the past required to segregate customer payments, and the rule in question here has yet to be enforced. If and when the regulation does go into effect, respondents may well be driven out of business, and on this basis the District Court expressly found that respondents are threatened with irreparable harm.

Arrayed against this irreparable harm to respondents is the contention of the Solicitor General that the segregation requirement must be placed into effect immediately, in order to protect customers from loss in the event that respondents become insolvent or unable to execute their customers' options during the time before this Court disposes of the case. The Solicitor General argues, quite correctly of course, that the Commission enacted the regulation because it felt the public needed the protection, and the Court of Appeals upheld the Commission's judgment as reasonable.

But the same panel which sustained the regulation also deemed it appropriate to enter stays of mandate. Undoubtedly, the court recognized that during the time in which the

case is pending before this Court customers will be guarded at least to some degree by the other Commission regulations, which were not enjoined and which have already gone into effect. More importantly, the court secured interim protection for investors by ordering bonds to be posted by respondents. Although the Solicitor General now complains that the bonds are not large enough to guarantee adequate insurance against loss, and that nothing short of the amounts that would have to be segregated under the terms of the regulation will suffice, these same arguments were made to, and rejected by, the Court of Appeals when it granted the stays and when it denied the Commission's motion to reconsider the amount of bond which had been set for respondents British American and Lloyd, Carr. No significant change in circumstances is offered to justify re-evaluation of the Court of Appeals' determination that the posted sums are adequate. See *Jerome* v. *McCarter*, 21 Wall. 17, 28–31 (1874). With the case in this posture, the risk of harm from putting off enforcement of the regulation for a few more months certainly appears to be outweighed by the potential injury to respondents if the regulation were allowed to go into effect.

If I were certain that this Court would not grant certiorari, the fact that the balance of equities clearly favors respondents would not be a sufficient justification for leaving the stays in force. But, without in any way expressing my own view as to the merits, it is not entirely inconceivable to me that four Justices of this Court will deem respondents' attack on the segregation requirement worthy of review. Although the question of whether that requirement is arbitrary and capricious is rather fact intensive, and is thus the type of matter that is normally appropriate for final resolution by the lower courts, see *New York* v. *Kleppe, supra,* at 1311, it does appear that the regulation would fundamentally alter the ground rules for doing business in a substantial industry, with potentially fatal consequences for a number of the firms currently

in the trade, and this case presents the first opportunity for this Court to pass on action taken by the recently created Commission.

In these circumstances, I cannot say that the Court of Appeals abused its discretion by staying its mandate. The application to vacate the stays must accordingly be denied.

*It is so ordered.*