441 So.2d 148 (1983)
Stephen Todd BOOKER, Appellant,
v.
STATE of Florida, Appellee.
Stephen Todd BOOKER, Petitioner,
v.
Louie L. WAINWRIGHT, Respondent.
Stephen Todd BOOKER, Petitioner,
v.
Bob GRAHAM, Governor, Etc., Respondent.
Nos. 64517-64519.
Supreme Court of Florida.
November 17, 1983.
*149 James E. Coleman, Jr. and Marian E. Lindberg of Wilmer, Cutler and Pickering, Washington, D.C.; Jeffrey S. Weiner of Weiner, Robbins, Tunkey & Ross, Miami, and Paul S. Rothstein of Rothstein & Skoro, Gainesville, for appellant/petitioner.
Jim Smith, Atty. Gen. and Lawrence Kaden, Asst. Atty. Gen., Tallahassee, and Art *150 Wiedinger, Asst. Gen. Counsel to the Governor, Tallahassee, appellee/respondent.
ADKINS, Justice.
This is a direct appeal from an order of the circuit court of Alachua County denying appellant's motion to vacate and set aside judgment and sentence and stay execution and other related matters. We also have before us petitions for writs of habeas corpus and mandamus. The appellant has been sentenced to death for the offense of first-degree murder. We have jurisdiction. Art. V, § (3)(b)(1), (7) and (9), Fla. Const.
Appellant, Stephen Todd Booker, was convicted and sentenced to death upon the jury's recommendation in June 1978. In October 1978 a second sentencing hearing, without the presence of a jury, was conducted. This hearing also resulted in imposition of a death sentence for the murder charge. The circuit court's judgment and sentence were upheld by this Court in March 1981. Booker v. State, 397 So.2d 910 (Fla. 1981). Certiorari was denied by the United States Supreme Court. Booker v. Florida, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981). The governor signed Booker's death warrant to be effective the week of April 16, 1982.
On April 13, 1982, Booker filed a motion to vacate and a motion for new trial before the circuit court pursuant to Florida Rules of Criminal Procedure 3.850 and 3.600. The motions were denied and the court's order denying those motions was upheld by this Court on April 19, 1982. Booker v. State, 413 So.2d 756 (Fla. 1982). Booker then filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Florida. The federal district judge denied relief, but the United States Court of Appeals for the Eleventh Circuit granted a stay of execution. Booker v. Wainwright, 675 F.2d 1150 (11th Cir.1982). Ultimately, the eleventh circuit denied relief. Booker v. Wainwright, 703 F.2d 1251 (11th Cir.), rehearing and rehearing en banc denied, 708 F.2d 734 (11th Cir.1983). Certiorari was denied by the United States Supreme Court a second time on October 17, 1983, and on October 27, 1983, the governor signed a second death warrant, effective the week of November 11, 1983.
On November 8, 1983, Booker filed the present motions before the circuit court. A hearing was set on the Rule 3.850 motion for November 10, 1983. On that date the trial judge granted Booker a continuance until November 14, 1983. On November 16, 1983, the court entered its order denying all Booker's motions. We affirm that order.
Booker's 3.850 motion alleged five grounds for relief: A) competency of trial counsel; B) prosecutor's inflammatory closing argument during sentencing; C) arbitrariness of Florida's death penalty; D) constitutionality of electrocution; and, E) constitutionality of aggravating circumstance, section 921.141(5)(h) (heinous, atrocious, or cruel), Florida Statutes (1981).
The trial court found that all grounds, with the exception of ground A, were not cognizable on collateral attack because they could have been raised on direct appeal. We agree. Armstrong v. State, 429 So.2d 287, 288 (Fla. 1983); Thompson v. State, 410 So.2d 500, 501 (Fla. 1982).
Booker's claim of ineffectiveness of trial counsel was based on allegations of failure to properly prepare an insanity defense or investigate mitigating circumstances. Specifically, Booker alleged that his counsel failed to investigate Booker's past, failed to provide adequate medical evidence to his psychiatric experts, and failed to contact Booker's grandmother who would have provided helpful testimony.
The trial court followed the evaluation of ineffective assistance of trial counsel as set forth by this Court in Knight v. State, 394 So.2d 997, 1001 (Fla. 1981).
First, the defendant must detail in his pleading the specific omission or overt act upon which the claim of ineffective assistance of counsel is based. Second, the defendant must show that the act or omission was a substantial and serious deficiency measurably below the standard of competent counsel. Third, the defendant must show that the deficiency, viewed under the *151 circumstances, probably affected the outcome of the proceedings. Finally, the defendant's showing of substantial, prejudicial deficiency must withstand the state's rebuttal, which may be achieved by showing beyond a reasonable doubt that there was no prejudice in fact.
The trial judge found that Booker had not met his burden as a matter of law. We must agree. The relevant facts were set out in the trial court's order after the court considered all of the evidence presented at the hearing, the court file and records, arguments and memoranda of counsel. The trial court found the following: Booker's counsel, Mr. Bernstein, at the time of the Booker trial, was a seasoned attorney who had been with the public defender's office about four years and had handled approximately four hundred felony cases and tried approximately ninety-six cases prior to representing Mr. Booker. He had handled some twelve to fifteen felony cases dealing with insanity issues prior to Booker's case. Mr. Bernstein had tried, through penalty phase, one capital case, assisted in one more, and tried a third which never got to a penalty phase due to a not-guilty verdict. In addition, Mr. Bernstein had attended a statewide seminar for defense attorneys on the subject of capital cases prior to the Booker trial and was a senior member of the staff of the public defender's office at the time.
The court found that in preparation of this case Mr. Bernstein took depositions of fifteen to eighteen witnesses, reviewed some fifty-five pieces of evidence prior to trial that the state introduced at trial. He filed numerous motions dealing with the constitutionality of the death penalty in Florida as reflected by the record on appeal. During the preparation of this case for trial Mr. Bernstein was in constant consultation with other members of his office regarding the issues of this case and, according to his testimony, did everything he could think of to prepare this case for trial and its penalty phase. This is exemplified by his testimony that voir dire in this case was very important to both the capital nature of the offense and the insanity defense and the record indicates that some four hundred twenty-nine pages were devoted to this portion of the trial.
After identifying early the sole defense to these charges as an insanity/lack of premeditation defense, Mr. Bernstein did the following to support and promote that defense: conducted several interviews with defendant; moved for and obtained services of three psychiatrists and one psychologist; obtained hospital records from mental experts from Alachua General Hospital and Walter Reed Hospital; obtained mental experts' depositions of witnesses connected with Booker at or near the time of the crime; obtained from mental experts letters and notes from Booker to other parties including a suicide note and a pathologist's report describing the nature of the killing; had several meetings with the court-appointed mental experts and called one such expert at the guilt phase of the trial and relied on the opinion of a second at the sentencing phase of the trial.
Although defense experts testified that Mr. Bernstein should have gone further and provided these experts further information regarding additional hospitalizations of Booker as well as his school and military records and some juvenile court records, the record is clear and unrebutted that the appointed medical/mental experts for Mr. Bernstein never requested these from Mr. Bernstein before reaching their opinion as to the mental condition of Booker. The record shows that one or more of these doctors was versed in and had been doing legal sanity and mental issues testing for the courts for some time, approaching one hundred cases prior to Booker's case. Mr. Bernstein relied on these experts to determine what material they needed to render their expert opinions.
The trial court found Mr. Bernstein's actions to be reasonable reliance by an attorney practicing law in 1978. We have considered the record in full and we agree with this conclusion. In addition, the trial court also found that the decision by Mr. Bernstein at trial to use the testimony of a *152 particular expert rather than medical, school or other hospital records to establish Booker's possible prior organic brain syndrome or schizophrenia was a reasonable trial strategy.
It was also alleged by expert attorneys for Booker that the failure of Mr. Bernstein to contact family members was a deficiency that illustrated his incompetency and/or ineffectiveness. The trial court found that Mr. Bernstein made reasonable efforts to obtain this information through interviews with Booker, checks with Booker's past records, calls to Booker's prior counsel in a prior robbery trial and otherwise. Mr. Bernstein also testified that, while the information in the grandmother's affidavit might have opened new avenues to explore, he could not say it would have changed the outcome of the case via jury verdict, jury recommendation of sentence or the court's actual sentence. We agree with the trial court's conclusion that there is no merit to this portion of Booker's argument on his ineffective assistance of counsel claim.
The trial court carefully listened to the testimony of defense experts on law dealing with such subjects as the absence of medical records, the absence of a competency hearing, the need for a neurologist in the case, how a penalty phase should be prepared for, and what an expert doctor should have in the way of information. The trial court was able to judge the demeanor of these witnesses and hear what parts of the record they read or failed to read and whether they had talked to Booker or Mr. Bernstein as to trial strategy with the experts. It is the trial court's responsibility to judge the usefulness of this testimony, being the ultimate trier of fact in this cause. The trial court found that Mr. Bernstein did conduct the trial and penalty phases in an effective, competent manner in 1978. The test is one of reasonableness and effectiveness of counsel and we cannot disagree with the trial court's conclusion that Booker did receive reasonable and effective counsel through the representation of Mr. Bernstein during the trial and penalty phase.
The court also found that Mr. Bernstein conducted a thorough, lengthy pre-trial investigation reasonably focused on the insanity defense. It was Mr. Bernstein's trial strategy to try for second-degree murder should the insanity defense fail. This strategy was reasonable in light of the overwhelming evidence against his client. We agree with the court's conclusion that Booker has failed the second prong of the Knight test, i.e., Booker has not shown an act or omission which was a substantial and serious deficiency measurable below the standard of competent counsel. Certainly, Booker has demonstrated nothing which, under the third prong of Knight, would have caused the results of the case to be different.
Accordingly, we find no error and affirm the order of the trial court denying Booker's motion for post-conviction relief.
Booker bases his petition for writ of habeas corpus on the claim that he was denied proportionality review of his sentence on his direct appeal from his conviction and sentence of death. 397 So.2d at 910. We disagree.
In State v. Dixon, 283 So.2d 1, 10 (Fla. 1973), cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we stated that review by this Court guaranteed that a similar result would be reached under similar circumstances in other cases. This Court's interpretation of section 921.141, Florida Statutes (1981), was upheld by the United States Supreme Court in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976):
By following this procedure [proportionality review] the Florida court has in effect adopted the type of proportionality review mandated by the Georgia statute. [Citation omitted] And any suggestion that the Florida court engages in only cursory or rubber-stamp review of death penalty cases is totally controverted by the fact that it has vacated over one-third of the death sentences that have come before it.
*153 Id. at 259, 96 S.Ct. at 2969. See also Herzog v. State, 439 So.2d 1372 (Fla. 1983), and Routly v. State, 440 So.2d 1257 (Fla. 1983).
The fact that the issue of proportionality review is pending in the United States Supreme Court in Harris v. Pulley, 692 F.2d 1189 (9th Cir.1982), cert. granted, ___ U.S. ___, 103 S.Ct. 1425, 75 L.Ed.2d 804 (1983) (in Pulley v. Harris), is of no significance to the instant case. The United States Supreme Court has stated that the issue will not apply to states which are already conducting proportionality review. The United States Supreme Court has already approved of this Court's method of review in a specific statement in Proffitt and this Court has repeatedly stated that we conduct proportionality review in all death cases.
Recently, in Messer v. State, 439 So.2d 875 (Fla. 1983), we specifically stated that just because proportionality is not mentioned in its opinion on direct appeal, that does not mean that proportionality review has been omitted. This Court quoted from Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla.), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), in which we previously noted that the Court's review process insured proportionality among the various death sentences. Therefore, although we did not specifically mention other capital cases in our decision on Booker's direct appeal, we did in fact undertake proportionality review. That review is an inherent aspect of our review of all capital cases. We need not specifically state that we are doing that which we have already determined to be an integral part of our review process.
We find that Booker is not entitled to relief and therefore deny his petition for writ of habeas corpus and for writ of mandamus.
We find no error on the part of the trial judge in denying the Rule 3.850 motion. We affirm the judgment of the court below, and we deny any further stay of execution.
No petition for rehearing will be entertained.
It is so ordered.
ALDERMAN, C.J., and BOYD, McDONALD, EHRLICH and SHAW, JJ., concur.