No. A–220. WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS v. BOOKER. Application to vacate the order of the United States Court of Appeals for the Eleventh Circuit, dated September 9, 1985, staying the execution of sentence of death, presented to JUSTICE POWELL, and by him referred to the Court, granted. JUSTICE BLACKMUN and JUSTICE STEVENS would deny the application to vacate the stay.

JUSTICE POWELL, concurring.*

My vote was to grant Florida's application to vacate the stay of execution in this case. I write as it seems important to address two points raised by JUSTICE MARSHALL's dissent.

I

The dissent contends that our action in this case conflicts with our customary deference to the decisions of courts of appeals on stay applications. Such deference is not absolute. We have noted previously that "[s]tays of execution are not automatic pending the filing and consideration of a petition for a writ of certiorari from this Court to the court of appeals that has denied a writ of habeas corpus." *Barefoot* v. *Estelle*, 463 U. S. 880, 895 (1983). To the contrary, stays in cases of this sort should be granted only when (i) it is reasonably probable that four Members of the Court would vote to grant certiorari or to note probable jurisdiction, and also (ii) there is a significant possibility that this Court will reverse the decision below. *Ibid.*[1] In this case, after examining the State's application to vacate, the respondent's response, the application for a stay filed with the Court of Appeals, and the opinions of the Court of Appeals and the District Court, I concluded that there was no basis for finding that either prong of the *Barefoot* v. *Estelle* test was satisfied. The Court of Appeals offered no reasons for its decision to grant the stay application, and no plausible reason appeared from the record.

---

*This opinion was filed September 24, 1985.

[1] The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases.

Deference is a two-way street. Although my vote did not depend on speculation as to the Court of Appeals' reason for granting respondent's stay application, it would not be surprising if that court was confused by the seeming absence of deference in our decisions in *Pinkerton* v. *McCotter, ante,* p. 925, and *Darden* v. *Wainwright, ante,* p. 928. In both of those cases, this Court reversed denials of stays of execution, on the ground that four Justices either had voted to grant certiorari or had suggested that such a vote was likely. I joined those decisions out of a concern that the Court ordinarily should not permit an execution to moot our consideration of a case that we had agreed, or probably would agree, to hear on the merits. I noted, however, that in my view the petitions in those cases were wholly without merit. *Darden, ante,* at 928 (POWELL, J., concurring); *Pinkerton, ante,* at 926 (POWELL, J., concurring). Consequently, and given the Court of Appeals' greater familiarity with the case, there was a strong argument that the proper course was to accept that court's evaluation of the likelihood of reversal. I declined to accept that argument in those cases, although the decision was a close one.[2]

If affirmance was not required in *Pinkerton* and *Darden* under an appropriately deferential standard of review, it cannot be *necessary* here. In *Pinkerton* and *Darden,* the Court of Appeals' judgment that reversal on the merits was unlikely had substantial force; in this case, the Court of Appeals' decision lacks a plausible justification. Only a generalized preference for delay in capital punishment cases would justify affirming the issuance of a stay solely on deference grounds, while according little or no deference where a stay has been denied below. In my view, the degree of deference accorded court of appeals rulings on stay applications cannot properly depend so completely on the result reached below.[3] Rather, this Court should both hesitate to overturn lower courts' decisions—since those decisions often reflect superior knowledge of and familiarity with the particular case—and yet remain constant in our duty to reverse those decisions in which it

---

[2] *Darden* v. *Wainwright, ante,* at 928 (POWELL, J., concurring); *Pinkerton* v. *McCotter, ante,* at 926 (POWELL, J., concurring).

[3] If this Court defers only to grants of stays, while giving searching review to every denial of a stay, the lower federal courts may in time come to issue stays routinely. In that event, *Barefoot* v. *Estelle*'s statement that stays of execution are not automatic in capital cases, 463 U. S., at 895, would effectively be overruled.

appears that a court of appeals has abused its discretion. Application of these principles in *Pinkerton* and *Darden* was difficult, given my view that the petitions in those cases were meritless. This case plainly presents weaker grounds for affirming the decision reached below.[4]

## II

The second point which the dissent raises requires less discussion. The dissent appears to conclude that it is inappropriate, in cases such as this one, to vacate a stay prior to the filing of the petition for certiorari. This position would render the grant of a stay effectively unreviewable in capital cases. The role of a stay in such cases is to delay the execution while the petition for certiorari is prepared and filed. If a stay, once entered, must necessarily remain in place until it has accomplished its purpose, then review of decisions to grant stays is senseless. This Court has never suggested that the discretion to grant or deny stays in capital cases (or any other class of cases) is total.

Finally, it bears emphasizing that the State has a legitimate interest in carrying out its lawfully imposed sentences. Respondent was sentenced to death for a particularly brutal murder in 1978. His conviction and sentence have thrice been reviewed by the Florida Supreme Court. *Booker* v. *State*, 441 So. 2d 148 (1983); *Booker* v. *State*, 413 So. 2d 756 (1982); *Booker* v. *State*, 397 So. 2d 910, cert. denied, 454 U. S. 957 (1981). He has filed two petitions for habeas corpus in federal court; both have been denied. *Booker* v. *Wainwright*, 764 F. 2d 1371 (CA11 1985); *Booker* v. *Wainwright*, 703 F. 2d 1251 (CA11), rehearing denied, 708 F. 2d 734, cert. denied, 464 U. S. 922 (1983). This Court has twice denied certiorari. *Booker* v. *Wainwright*, 464 U. S. 922 (1983); *Booker* v. *Florida*, 454 U. S. 957 (1981). None of the many opinions that have been filed in this protracted litigation suggests that respondent is innocent or that his conviction raises any serious constitutional issues. For our system of justice to function effectively, litigation in cases such as this one must cease when there is no reasonable ground for questioning either the guilt of the defendant or the constitutional sufficiency of the procedures employed to convict and sentence him.

---

[4] I should emphasize that nothing in either *Pinkerton, Darden,* or this case alters the test that we set forth in *Barefoot* v. *Estelle* for determining when entry of a stay is appropriate.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Today the Court vacates a stay pending certiorari granted by the Court of Appeals for the Eleventh Circuit, although we have not even received the petition for certiorari. In so doing, the Court ignores repeated reminders by Justices of the Court that our power to vacate a stay entered by a lower court should be reserved only for exceptional circumstances, see, *e. g., Kemp* v. *Smith,* 463 U. S. 1321 (1983) (POWELL, J., in chambers); *O'Connor* v. *Board of Education,* 449 U. S. 1301 (1980) (STEVENS, J., in chambers), and that the lower court's decision is "deserving of great weight," *Commodity Futures Trading Comm'n* v. *British American Commodity Options Corp.,* 434 U. S. 1316, 1319 (1977) (MARSHALL, J., in chambers).

Although the State's brief application fails even to suggest that it has met this heavy burden, the Court has moved "with an impetuousness and arrogance that is truly astonishing," *Wainwright* v. *Adams,* 466 U. S. 964, 966 (1984) (MARSHALL, J., dissenting from the grant of application to vacate stay of execution). The apparent basis for the State's application is a concern that the Court of Appeals understood our recent decisions in *Pinkerton* v. *McCotter, ante,* p. 925, and *Darden* v. *Wainwright, ante,* p. 928, to mandate the grant of a stay in this case. However, this Court has provided detailed guidance to the courts of appeals as to stays in capital cases, see *Barefoot* v. *Estelle,* 463 U. S. 880, 887–896 (1983). There is no reason for us to assume, on the meager record before us, that the Court of Appeals was unaware of, or misapplied, those standards—let alone that it committed the gross abuse of discretion necessary to support a grant of this application, see *Wainwright* v. *Adams, supra,* at 965. I am therefore at a loss to understand the Court's unwillingness to let matters run their ordinary course.

I dissent.