# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2022 KJ 0188

## STATE OF LOUISIANA IN THE INTEREST OF D.W.

*Mut-*
*CHH*

Judgment Rendered: **SEP 2 3 2022**

\* \* \* \* \*

On Appeal from the
City Court of East St. Tammany
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 21 JP 2152

Honorable Bryan D. Haggerty, Judge Presiding

\* \* \* \* \*

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, LA

Attorneys for Appellee,
State of Louisiana

Katherine M. Franks
Madisonville, LA

Attorney for Defendant-Appellant,
D.W.

\* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Chutz J., concurs. by CHH

**HESTER, J.**

On May 28, 2021, the State filed petition number 21 JP 2152, alleging D.W.[1] to be delinquent. The petition alleged D.W. committed simple burglary involving a firearm (count one), a violation of La. R.S. 14:62(B)(2), and theft of a firearm, second offense (count two), a violation of La. R.S. 14:67.15(C)(2). D.W. denied the allegations. On October 15, 2021, after a hearing, the juvenile court adjudicated D.W. delinquent as alleged on count one and delinquent for the responsive offense of theft of a firearm, first offense, on count two, a violation of La. R.S. 14:67.15(C)(1).[2] On October 20, 2021, D.W. filed a motion for a new trial. On October 28, 2021, the motion for new trial was heard and denied.

On November 16, 2021, the juvenile court committed D.W. to the custody of the Office of Juvenile Justice (OJJ) until his twenty-first birthday on each count, to be served concurrently, recommended secure placement, suspended all but thirty months, and placed D.W. on parole for the remainder of his sentence. The next day, on November 17, 2021, the juvenile court, ex proprio motu, modified the disposition to thirty months in the custody of the OJJ on each count, to be served concurrently,[3] recommended secure placement, suspended all but twenty-four months, and placed D.W. on parole supervision for the suspended portion of the disposition. D.W. now appeals, challenging the sufficiency of the evidence to support the adjudications.

---

[1] According to the petition, D.W.'s date of birth is October 1, 2004. As a minor, he will be referred to by his initials throughout this opinion for the sake of his confidentiality. See Uniform Rules of Louisiana Courts of Appeal, Rule 5–2.

[2] The allegations were combined at the adjudication hearing with allegations filed under petitions 21 JC 2125 and 21 JC 2153. D.W. was found not guilty as to all allegations under petition 2153 but was adjudicated delinquent under petition 2125, based upon which he filed a separate appeal in this court.

[3] While the minute entry states that the modified dispositions are to run concurrently, the modification disposition order contains no such expression. Nonetheless, the dispositions shall be served concurrently pursuant to La. Code Crim. P. art. 883, as the juvenile court did not expressly state otherwise and the offenses are based on the same act or transaction. See **State v. Dyson,** 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 223 n.2, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

2

After a thorough review of the record, we reverse the adjudication of delinquency and vacate the dispositions.

## STATEMENT OF FACTS

On or about April 23, 2021, during the early morning hours, a marked sheriff's unit parked at 617 Bellingrath Lane was burglarized. Several items were stolen from the unit, including a police radio and tourniquet, handcuffs, a pistol, a patrol rifle, extra magazines for the pistol and rifle, an outer tactical vest, and a bullet proof vest. The unit belonged to Deputy Boris Medvedev of the St. Tammany Parish Sheriff's Office (STPSO). Sergeant Joel Hoskins of the Slidell Police Department (SPD) was assigned with other law enforcement officers to investigate a string of burglaries in the area surrounding the Charleston Square neighborhood in Slidell, including on and around Oriole Drive and D.W.'s residence, located at 802 Ashville Drive.[4] After being informed of D.W.'s arrest for a vehicle burglary that occurred in that area, on Oriole Drive, Sergeant Hoskins sought and obtained a search warrant for D.W.'s residence.

During the execution of the search warrant, Sergeant Hoskins recovered several evidentiary items, including a hoodie with reflective striping that fit the description of the attire worn by the perpetrator during one of the other burglaries or attempted burglaries, and an outer tactical vest issued to and worn by law enforcement officers. The hoodie was found in D.W.'s bedroom while the vest was located in the attic that was accessed from the closet in D.W.'s bedroom. Further, there were items located just outside of the home in an adjacent wooded lot, including a police radio and tourniquet found hanging in a tree.[5] Sergeant Hoskins initially received consent from D.W. and his mother to search D.W.'s phone, before

---

[4] While Deputy Medvedev's unit was located in the same area, Sergeant Hoskins testified that he was not assigned to investigate that burglary because the unit was a STPSO deputy police unit, and the STPSO elected to investigate the incident on its own.

[5] Deputy Medvedev testified that the stolen firearms were never recovered to his knowledge.

obtaining a search warrant for the phone. As Sergeant Hoskins began going through D.W.'s phone he observed photographs of different firearms as well as text messages that led him to believe that D.W. was involved in the dealing or selling of firearms. Based on all of the evidence collected, Sergeant Hoskins applied for and executed a warrant for D.W.'s arrest for the instant offenses and transported him to the Florida Parishes Juvenile Detention Center (FPJDC). Deputy Medvedev and Detective Matthew Nelson of the STPSO later identified items found in and around D.W.'s residence as the items that were stolen from Deputy Medvedev's sheriff's unit.

## ASSIGNMENT OF ERROR

In the sole assignment of error, D.W. notes that the State offered no direct evidence that he entered Deputy Medvedev's sheriff's unit. He notes that while there were persons shown leaving the area of Deputy Medvedev's sheriff's unit, including one person who was carrying what could have been the tactical jacket of Deputy Medvedev, the persons were unidentifiable because only their backs were seen. D.W. further contends that while he possessed a hoodie with reflective stripes, it was not the same hoodie as the one being worn by a perpetrator captured on video while committing one of the other burglaries in the area, and the hoodie was not seen in the burglary of Deputy Medvedev's sheriff's unit. D.W. argues that there was no other evidence offered to establish the identification offered by the prosecution. In that regard, he notes that Sergeant Hoskins admitted that prior to the execution of the search warrant he had no direct evidence to connect D.W. to the burglary of the sheriff's unit. D.W. further maintains that Sergeant Hoskins testified that the evidence found in D.W.'s home demonstrating that he possessed items stolen during the burglary was the sole proof that he entered the car and stole the items. He notes that the allegations do not consist of receiving stolen goods and argues the State failed to prove an essential element of simple burglary, the "entry" into the vehicle. As to the theft of a firearm offense, D.W. again argues the State failed to present any

4

direct evidence to prove his identity as the person who stole or misappropriated the items taken from the sheriff's unit without reliance on the presumption of La. R.S. 15:432.[6]

In response, the State notes that there was no indication by the juvenile court that it relied on the presumption of La. R.S. 15:432. The State further argues that even if the juvenile court relied on and/or considered the provisions of La. R.S. 15:432, this was not the only basis for the adjudications. The State notes that surveillance footage from another burglary or attempted burglary in the area showed that the perpetrator was wearing a hoodie with reflective striping, the same style hoodie located in D.W.'s bedroom during the execution of the search warrant for his residence. The State argues that this is significant as it links D.W. to a separate attempted vehicle burglary in the same area and shows intent on his part to burglarize Deputy Medvedev's sheriff's unit. The State further notes that several photographs and text streams recovered from D.W.'s phone placed him in possession of Deputy Medvedev's stolen AR rifle on the same day as the burglary of Deputy Medvedev's unit. Finally, the State notes the discovery of some of the stolen items in and around D.W.'s residence.

When the State files a petition alleging a delinquent act by a child, it has the burden of proving each element of the offense alleged beyond a reasonable doubt. See La. Ch. Code art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. **State in Interest of D.M.**, 2017-1418 (La. App. 1st Cir. 2/21/18), 2018 WL 1007352, at *3. Thus, on appeal, the standard of review for sufficiency of the evidence enunciated in **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

---

[6] The Louisiana Supreme Court in **State v. Searle**, 339 So.2d 1194, 1206 (La. 1976) (on rehearing), determined that the statutory presumption created by La. R.S. 15:432, i.e., that a person in unexplained possession of recently stolen property is the thief, is inapplicable in prosecutions for burglary.

(1979), is applicable to delinquency cases, i.e., whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660.

The **Jackson** standard is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. **D.M.**, 2018 WL 1007352, at *3. However, in juvenile proceedings, the scope of review of this court extends to both law and fact. La. Const. art. V, § 10. We must, therefore, decide if the juvenile court was clearly wrong in its determination that the offenses were proven beyond a reasonable doubt. See **State in Interest of Giangrosso**, 385 So.2d 471, 476 (La. App. 1st Cir. 1980), aff'd, 395 So.2d 709 (La. 1981).

As applicable here, simple burglary is the unauthorized entering of any vehicle with the intent to commit a felony or any theft therein. See La. R.S. 14:62(A). To be guilty of simple burglary, a defendant must have the specific intent to commit a felony or theft therein at the time of his unauthorized entry. **State v. Godbolt**, 2006-0609 (La. App. 1st Cir. 11/3/06), 950 So.2d 727, 730. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Such state of mind can be formed in an instant. Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the offender. **State in Interest of D.T.**, 2019-1284 (La. App. 1st Cir. 2/21/20), 2020 WL 862311, at *2. Specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is

6

excluded. **State v. Cousan**, 94-2503 (La. 11/25/96), 684 So.2d 382, 390. In this case, the petition further alleges that D.W. committed simple burglary "while armed with a firearm or, after entering, armed himself with or possessed a firearm." See La. R.S. 14:62(B)(2).

Theft of a firearm is the misappropriation or taking of a firearm which belongs to another, either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of the firearm is essential. La. R.S. 14:67.15(A). Theft is also a crime of specific intent. **State v. Jones**, 2019-1285 (La. App. 1st Cir. 5/11/20), 2020 WL 2393794, at *3, writ denied, 2020-00793 (La. 9/29/20), 301 So.3d 1192.

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. A person's mere presence at the scene is not enough to "concern" him in the crime. Only those persons who knowingly participate in the planning or execution of a crime may be said to be "concerned" in its commission, thus making them liable as principals. A principal may be connected only to those crimes for which he has the requisite mental state. **State ex rel. D.F.**, 2008-0182 (La. App. 1st Cir. 6/6/08), 991 So.2d 1082, 1085, writ denied, 2008-1540 (La. 3/27/09), 5 So.3d 138.

Where the key issue is the identity of the perpetrator of the crime, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification to carry its burden of proof. **State in Interest of T.B.**, 2020-0929 (La. App. 1st Cir. 2/19/21), 320 So.3d 1143, 1150. In the absence of internal contradictions and irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support an adjudication. Moreover, conflicting testimony as to factual matters is a question of

7

weight of the evidence, not sufficiency. The trier of fact, in this case, the juvenile court, is charged with making credibility determinations. A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight. <u>See</u> **State in Interest of T.C.**, 2018-1246 (La. App. 1st Cir. 12/21/18), 269 So.3d 716, 719. In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Thus, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. **D.M.**, 2018 WL 1007352, at *3.

Herein, Sergeant Hoskins testified that based on D.W.'s arrest for a similar offense in the same area, the May 2021 vehicle burglary on Oriole Drive,[7] and prior information regarding D.W. of which Sergeant Hoskins was aware, he believed D.W. "could possibly be a good suspect." Sergeant Hoskins similarly noted that due to D.W.'s arrest for the offense on Oriole Drive, "[h]e was placed on the map" for the instant offenses. Sergeant Hoskins confirmed that other individuals who lived in the area were also still under investigation for burglaries in the area. Sergeant Hoskins further confirmed that he had no direct evidence that D.W. committed the burglary of the sheriff's unit until the search warrant for his residence was executed.

Sergeant Hoskins noted that D.W. was wearing an ankle monitor bracelet at the time of his arrest and that D.W. removed the ankle bracelet himself, after Sergeant Hoskins removed the shackles.[8] On cross-examination, Sergeant Hoskins acknowledged that D.W., at some point before they arrived at the juvenile detention

---

[7] <u>See</u> **State in Interest of D.W.**, 2022-0187 (La. App. 1st Cir. __/__/22), relative to D.W.'s adjudication with respect to the Oriole Drive burglary.

[8] Justin Rowdy, the assistant supervisor at the FPJDC, similarly testified that D.W. removed his ankle bracelet during the intake process. Rowdy noted that D.W. gave him the bracelet and that it was broken or separated at the time but did not appear to have been tampered with.

8

center, stated that his ankle bracelet was broken. Sergeant Hoskins testified that he inquired about the ankle monitor data for D.W.'s whereabouts at the time of the Bellingrath Lane burglary but did not receive detailed information in response.

However, Sergeant Hoskins felt that "[g]iven the evidence, circumstances and prior knowledge," D.W. was involved and responsible for the offense on Bellingrath Lane. Sergeant Hoskins noted that he took a DNA sample from D.W. pursuant to a search warrant but could not recall the results of any testing. Regarding the hoodie or sweatshirt with reflective stripes found in D.W.'s bedroom, Sergeant Hoskins noted that the police had footage from another burglary or attempted burglary, on 239 Bluebird Drive, that shows a slim, teenager wearing a similar top pulling on door handles, apparently seeking to enter an unlocked vehicle. When asked if he saw the person's facial features, Sergeant Hoskins said he believed the individual was wearing a mask but recalled seeing his eyebrows, as they stood out on the video. After reviewing the footage in court and a still shot, Sergeant Hoskins confirmed that the individual may not have been wearing a mask, though he was wearing a hoodie. The color of the hoodie or sweatshirt could not be discerned, as the recording was made by an infrared camera system.

Greg Saurage with the ankle monitoring company, B.I., installed D.W.'s ankle bracelet. Saurage recalled observing that D.W. had the smallest ankles he had ever seen and confirmed that it was possible that the ankle bracelet may have been loose fitting. Brandy Polk, D.W.'s former probation officer, confirmed that D.W. wore his ankle bracelet during every visit. Polk also confirmed that D.W.'s ankle bracelet was not working when he was at the FPJDC and further confirmed that she was informed that D.W. removed his own ankle bracelet while at the FPJDC. Polk identified the B.I. printout of G.P.S. data (labeled with D.W.'s name and tracker number) for the points of location of D.W.'s ankle bracelet and confirmed that based on the data, it appeared that D.W. was at home on Ashville Drive from 4/22/2021 at

9

7:10 p.m., until 4/23/2021 at 10:57 a.m. The State agreed to stipulate that G.P.S. data showed that D.W.'s ankle bracelet was at D.W.'s residence at the time of the instant offenses.

Detective Nelson, who also participated in the investigation, testified regarding video footage captured around the time of the burglary by doorbell cameras of homes near Deputy Medvedev's residence, specifically at 610 and 611 Bellingrath Lane. The footage taken from the doorbell camera at 610 Bellingrath Lane depicts a distant, blurred view of three unidentified individuals walking down the street.[9] About six minutes later, presumably the same three individuals can be seen in the distance as they approach and begin running down the same street, but in the opposite direction. Detective Nelson testified, though it is not clear from the footage in the record, that the last individual in the video appeared to be wearing a vest (or bulky attire) and carrying something, and that Deputy Medvedev was "a big guy" with a large vest. Detective Nelson added that it looked as though the individual slung a rifle over his back. Detective Nelson confirmed that the wooded lot in which Deputy Medvedev's radio and tourniquet were found hanging in a tree was located on the corner by D.W.'s residence, that a pathway through the wooded lot led to Bellingrath Lane, and that the items were located approximately ten meters within the woods from Bellingrath Lane.

The execution of the search warrant for D.W.'s cell phone yielded further evidence. For example, repeated text messages sent to a contact labeled as "Uncle Joeseph [sic]" at 9:39 a.m. and 12:18 p.m. on April 23, apparently hours after the burglary in question on Bellingrath Lane, stated, in part, "Ft me I gotta show u som[,]" with an attached photograph of an M4, "AR style" rifle with a sling, scope,

---

[9] The time of the video footage captured by the doorbell camera at 610 Bellingrath Lane was not established in the record and the video itself does not have a time display. However, Deputy Nelson believed the footage was taken during the early morning hours.

and light affixed.[10] Another recovered photograph depicts D.W. holding an "AR style rifle" on the stairwell of his residence. A text message sent to a contact labeled as "Goon" on April 23 states, "I'm finna trade that bihh with my cousin Bc my big brother came and got the scope off of it[.] And I need to get it out my house[.]" A text message to a contact labeled "Cuz V3o" sent on April 23 includes a photograph of an "AR style" rifle and states, "Say go try to get bout four of them or 3 and some money[.]" The reply states, "Yungen that's worth two gat gang[.]" Another text message was sent on the same date to a contact labeled as "Spazz" with an attached photograph of someone holding an "AR style magazine" with ammunition and a portion of a rifle in the background. The reply states, "No take a pic of it onna ground don't show yo hand[.] Full thing[.]" The messages to "Spazz" continue with a photograph of the rifle on the floor with no scope attached and statements such as, "Trade a glock fa that handgun[,]" and later adding, "And he trynna sell the vest for a rack[.]"

Detective Nelson and Deputy Medvedev testified as to the uniqueness of the items recovered in or around D.W.'s residence and the items shown in the photographs retrieved from D.W.'s cell phone. They noted that the radio and vest were labeled with serial numbers and were verified as items taken from Deputy Medvedev's unit. Further, Detective Nelson testified that the type of ammunition shown in the photographs recovered from D.W.'s cell phone was the type issued to law enforcement, noting, "I believe the box is even stamped law enforcement only." Additionally, when shown one of the photographs in evidence, Detective Nelson and Deputy Medvedev testified that the depicted rifle had the same configuration as those issued by the sheriff's office. Deputy Medvedev further identified the photographed rifle as his rifle based on additional unique features. He noted that his

---

[10] At the hearing, Sergeant Hoskins translated the messages as, "Face Time me. I got to show you something."

11

sling was made by a company called Magpul, and that it has the capability of being switched from a two-point sling to a one-point sling; that the gun had recognizable scratches on the upper and lower receiver; and that the sling appeared to be his personal sling that he attached to his rifle. Regarding the photograph of D.W. holding a rifle, Deputy Medvedev testified that the rifle depicted in the photograph was very similar to his, adding, "I cannot say for a fact that it is mine, because the picture is very blurry."

C.W., D.W.'s brother, was the final witness to testify at the hearing. Pertaining to the evidence stolen in this case, C.W. admitted to putting the vest in the attic. However, C.W. denied burglarizing Deputy Medvedev's unit. When asked how he got the vest, he stated that someone gave the vest to his brother. When asked if someone gave his brother a long rifle, he responded, "Yes, sir."

As noted, on appeal D.W. claims the juvenile court relied on the statutory presumption, created by La. R.S. 15:432, that a person in unexplained possession of recently stolen property is the thief, ruled inapplicable to prosecutions for burglary by the Louisiana Supreme Court. **State v. Searle**, 339 So.2d 1194, 1206 (La. 1976) (on rehearing). **Searle** involved an appeal from a simple burglary conviction wherein the jury had been instructed on the judicially created rule that "unexplained possession of property recently stolen at the time of a burglary creates a presumption that the possessor committed the burglary." **Searle**, 339 So.2d at 1198. The evidence against the defendant in **Searle** consisted of his possession of a stereo, assorted stereo tapes and a rug stolen in the burglary of the residence, his statement to a friend that he had obtained the items from the residence, and a request to the friend not to "say anything to anyone." **Searle**, 339 So.2d at 1197. On rehearing, the court found that the judicially created presumption had resulted in the jury being told that if the State proved beyond a reasonable doubt that the defendant was in the unexplained possession of recently burglarized property, it must presume that he

committed the burglary. **Searle**, 339 So.2d at 1206. The court held that the presumption failed to meet the beyond a reasonable doubt standard, and the defendant had consequently been adjudged guilty without requiring that the State prove beyond a reasonable doubt every essential element of the crime charged.[11] **Id.**

Where there is evidence relative to the circumstances surrounding a burglary that is sufficient, when viewed in the light most favorable to the prosecution, to convince a rational trier of fact that the essential elements of simple burglary were proven beyond a reasonable doubt, we have refused to reverse the conviction on the basis of alleged improper use of the overruled burglary presumption. **State ex rel. S.D.C.**, 2009-1739 (La. App. 1st Cir. 2/12/10), 2010 WL 532334, at *4; see also **State v. Hopson**, 464 So.2d 18, 20 (La. App. 1st Cir. 1984), writ denied, 467 So.2d 537 (La. 1985). Conversely, as the supreme court made clear in **Searle**, mere possession of property recently stolen in a burglary does not create a presumption that the defendant committed the offense or relieve the State of its burden of proving the essential elements of the offense beyond a reasonable doubt. See also **State v. Brown**, 445 So.2d 422, 423-24 (La. 1984); **State v. Ewens**, 98-1096 (La. App. 5th Cir. 3/30/99), 735 So.2d 89, 93, writ denied, 99-1218 (La. 10/8/99), 750 So.2d 179; **State v. Arrington**, 514 So.2d 675, 677 (La. App. 2d Cir. 1987). Likewise, a defendant's mere possession of stolen goods is insufficient to prove beyond a reasonable doubt that he stole the goods. See **State v. Fontenot**, 95-2920 (La. 5/31/96), 675 So.2d 271, 272 (per curiam) (wherein the court found that the overall evidence did not exclude the reasonable hypothesis that the defendant in **Fontenot** was merely a "fence" for the stolen goods and was not necessarily the thief).

---

[11] The court questioned the continuing validity of La. R.S. 15:432 and suggested legislative attention to such presumptions, but said the statute was not unconstitutional on its face. **Searle**, 339 So.2d at 1203. Under the ruling in **Searle**, the use of mandatory presumptions in criminal cases will be sustained only if the prosecution can demonstrate that the presumed fact flows, beyond a reasonable doubt, from the proven fact on which it is made to depend. **Searle**, 339 So.2d at 1205.

This case was a juvenile proceeding, and thus, there was no jury, pursuant to La. Ch. Code art. 882 and no jury instruction as in **Searle**. Nonetheless, the State was required to prove every element of the offenses beyond a reasonable doubt. For the following reasons, based on our review of the record in the light most favorable to the State, we find that the juvenile court was clearly wrong in finding the evidence sufficient to prove every element of simple burglary and theft of a firearm beyond a reasonable doubt in this case.

While the State herein points to evidence tending to show that D.W. committed another offense in the same area as evidence of intent in this case, we note that the State cannot rely on evidence of another offense as substantive evidence of the instant offenses.[12] While the evidence overwhelmingly showed that D.W. was in possession of some of the stolen items at issue in this case, the record is devoid of any evidence that D.W. was even at the scene of the crime to commit the unauthorized entry of Deputy Medvedev's unit or to otherwise show that D.W. took or misappropriated items from the unit. Thus, the hypotheses of innocence, specifically, that D.W. was not at the scene of the unauthorized entry, that D.W. did not enter the unit, and that D.W. did not take anything from the unit, were not rebutted by any evidence presented at the hearing. Further, the testimony of D.W.'s brother, C.W., presented the hypothesis of innocence that someone gave the stolen property to D.W. There was no evidence presented to rebut this hypothesis of innocence. We find that no rational trier of fact could have found beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that D.W. committed the simple burglary or theft of a firearm alleged herein. Thus, after undertaking the constitutionally-mandated review of the law and facts, we find

---

[12] As noted, the instant offenses were joined at the adjudication hearing with allegations raised in separate petitions that are not at issue in the instant appeal.

14

manifest error by the juvenile court in its adjudications. The sole assignment of error has merit in this case.

In a criminal proceeding, a finding that the evidence is insufficient to support a conviction requires an acquittal; and a reviewing court making such a finding must enter a judgment of acquittal. **State v. Phillips**, 412 So.2d 1061, 1063 (La. 1982) (observing that "[w]hen a reviewing court reverses a conviction on the ground of evidentiary insufficiency, as distinguished from trial error, the double jeopardy clause of the fifth amendment precludes a second trial and requires the direction of a judgment of acquittal" and citing **Burks v. United States**, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150-51, 57 L.Ed.2d 1 (1978)).[13]   Similarly, in a juvenile delinquency proceeding, when a reviewing court finds that the evidence is insufficient to support an adjudication, the reviewing court must enter a judgment dismissing the delinquency petition with prejudice. See **State in Interest of J.P.**, 2019-0542 (La. App. 4th Cir. 9/25/19), 280 So.3d 245, 251, writ denied, 2019-01550 (La. 9/23/20), 301 So.3d 1155.   For the foregoing reasons, we reverse the adjudications of delinquency in this case and vacate the dispositions. The delinquency petition is dismissed with prejudice.

**ADJUDICATIONS REVERSED; DISPOSITIONS VACATED.**

---

[13] An exception to this rule exists under **State v. Byrd**, 385 So.2d 248, 251 (La. 1980), and La. Code Crim. P. art. 821(E), when the evidence presented at trial does not support the verdict returned but does support a responsive verdict or lesser included grade of the offense. This exception has been applied in juvenile delinquency proceedings. See **State in Interest of Pigott**, 413 So.2d 659, 663 (La. App. 1st Cir. 1982) (finding "no reason why the rationale and justification used in *Byrd* should not apply to juvenile cases on appeal"). However, we do not find sufficient evidence to support an adjudication for a responsive verdict or lesser included offense in this case. Specifically, because the evidence is insufficient to establish D.W.'s identity as the person who entered the vehicle with the specific intent to commit a felony or theft or who took or misappropriated a firearm from the vehicle, we find that the only available verdict in this case is not delinquent as to each count. La. Code Crim. P. arts. 814(50) & 815.